**HOWREY LLP**
James C. Pistorino (admitted *pro hac vice*)
1950 University Avenue, 4th Floor
East Palo Alto, CA  94303
Telephone: (650) 798-3580
Facsimile:  (650) 798-3600

**HOWREY LLP**
Zachary J. Weyher (10846)
170 South Main Street, Suite 400
Salt Lake City, UT  84101
Telephone: (801) 533-8383
Facsimile:  (801) 531-1486

Attorneys for Defendants and Counterclaim Plaintiffs
Sony Music Entertainment (f.k.a. Sony BMG Music
Entertainment), Target Corporation, and Best Buy
Stores, L.P. (erroneously sued as Best Buy Co., Inc.)

**HATCH, JAMES & DODGE, P.C.**
Brent O. Hatch (5715)
10 West Broadway, Suite 400
Salt Lake City, UT  84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Attorneys for Defendant and
Counterclaim Plaintiff FYE (a.k.a.
Trans World Entertainment)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| JAMES L. DRIESSEN, and MARGUERITE A. DRIESSEN, | **DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS AND LACK OF WRITTEN DESCRIPTION** |
| Plaintiffs and Counterclaim Defendants, | |
| vs. | |
| SONY BMG MUSIC ENTERTAINMENT; TARGET CORPORATION; BEST BUY CO., INC.; FYE (a.k.a. TRANS WORLD ENTERTAINMENT), | Case No. 2:09-cv-00140 |
| Defendants and Counterclaim Plaintiffs. | Judge Dale A. Kimball (Oral Argument Requested) |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND FACTS ........................................................................................2

      A.    Procedural Background Of The Case .......................................................2

      B.    Overview Of The '500 Patent ..................................................................2

      C.    Prosecution History Of The '500 Patent .................................................3

III.  STATEMENT OF UNDISPUTED, MATERIAL FACTS ....................................4

IV.   ISSUES TO BE DECIDED ....................................................................................6

V.    ARGUMENT ..........................................................................................................6

      A.    Legal Standard For Summary Judgment..................................................6

      B.    Independent Claim 1 Of The '500 Patent Is Invalid As Indefinite .............7

            1.    There Is No Structure Associated With The Limitation "Means
                  For Storing And Retrieving A Record On Or In A Physical
                  Medium" ........................................................................................ 8

            2.    Dependent Claims 2, 3, 4 And 7 Are Also Indefinite .................. 10

      C.    Independent Claim 10 Is Invalid Due To A Lack Of Written
            Description ...............................................................................................10

            1.    There Is No Description Of Sending A Payment Message To A
                  "Selling Computer" Nor Creating An Authorization Message In
                  Response To Said Payment Message........................................... 12

            2.    Dependent Claims 12, 13, 14, And 15 Also Lack Written
                  Description Support ..................................................................... 16

VI.   CONCLUSION.....................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
No. 2008-1248, *(*Fed. Cir. March 22, 2010) (en banc) ................................................. 10, 11, 15

*Atmel Corp. v. Information Storage Devices, Inc.*,
198 F.3d 1374 (Fed. Cir. 1999) .......................................................................... 6

*B. Braun Medical, Inc. v. Abbott Laboratories*,
124 F.3d 1419 (Fed. Cir. 1997) .......................................................................... 7

*Biomedino, LLC v. Waters Technologies Corp.*,
490 F.3d 946 (Fed. Cir. 2007) ...................................................................... 7, 9, 10

*Cardiac Pacemakers Inc. v. St. Jude Medical, Inc.*,
*296 F.3d* 1106 (Fed. Cir. 2002) ........................................................................... 7

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) .......................................................................... 6

*Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed. Cir. 2005) .......................................................................... 6

*Desper Products, Inc. v. QSound Labs, Inc.*,
157 F.3d 1325 (Fed. Cir. 1998) .......................................................................... 6

*Gentry Gallery, Inc. v. Berkline Corp.*,
134 F.3d 1473 (Fed. Cir. 1998) .............................................................. 6, 11, 12, 15

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
558 F.3d 1368 (Fed. Cir. 2009) ...................................................................... 7, 12

*In re Gosteli*,
872 F.2d 1008 (Fed. Cir. 1989) ......................................................................... 11

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
424 F.3d 1324 (Fed. Cir. 2005) .......................................................................... 7

*Linear Technology Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004) .......................................................................... 6

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
424 F.3d 1336 (Fed. Cir. 2005) .............................................................. 12, 14, 16

*Lockwood v. American Airlines, Inc.*,
  107 F.3d 1565 (Fed. Cir. 1997) ............................................................................... 11

*Reiffin v. Microsoft Corp.*,
  214 F.3d 1342 (Fed. Cir. 2000) ............................................................................... 10

*TurboCare Division of Demag Delaval Turbomachinery Corp. v. General Electric Co.*,
  264 F.3d 1111 (Fed. Cir. 2001) ............................................................... 12, 14, 15

*University of Rochester v. G.D. Searle & Co.*,
  358 F.3d 916 (Fed. Cir. 2004) ............................................................................ 7, 11

## Statutes

35 U.S.C. § 112 ................................................................................................................ 1, 7

35 U.S.C. § 112, ¶ 1 .................................................................................................... 11, 16

35 U.S.C. § 112, ¶ 2 ...................................................................................................... 6, 16

35 U.S.C. § 112, ¶ 6 ........................................................................................................ 7, 9

## Rules

Federal Rule of Civil Procedure 56(c) ........................................................................... 6

DM_US:23168772_1

## I. INTRODUCTION

Currently, both parties combined have submitted approximately 90 pages of claim construction briefing, excluding exhibits, arguing the proper construction of approximately 15 different terms and Plaintiffs have asked the Court to schedule a *Markman* hearing to argue the proper constructions of the 15 terms. Every claim asserted in this litigation, however, includes one or more of the invalid limitations addressed below. Therefore, granting Defendants' summary judgment motion of invalidity will allow the Court to dispose of this case.

To begin with, many of the asserted claims include limitations that are indefinite. During the prosecution of the '500 patent, all of the claims from the original application were cancelled and new ones were submitted as amendments. One of the limitations added by amendment was written in means-plus-function format and claimed a means for writing records on and reading records from a physical medium. These limitations are indefinite under 35 U.S.C. § 112, because there is no structure associated with this functionality in the original disclosure.

Furthermore, some of the newly added claims included new limitations that required computers to create and exchange messages about in person sales transactions. In violation of 35 U.S.C. § 112, there is no disclosure anywhere in the written description portion of the '500 patent that describes these features.

There is no reason why the Court should continue through a *Markman* hearing, or address any further issues in this case. The patent claims Plaintiffs seek to enforce are invalid, and the claims in this case fail as a matter of law.

## II.    BACKGROUND FACTS[1]

### A.    Procedural Background Of The Case

On February 17, 2009, Plaintiffs filed a complaint accusing Defendants of infringing the '500 patent.  (Dkt. No. 1.)  On September 30, 2009, Plaintiffs disclosed that they were asserting claims 1-4, 7, 10, and 12-15 against Defendants.  (Dkt. No. 43 at 2.)  The parties filed their opening claim construction briefs on February 8, 2010 and their responsive claim construction briefs on February 22, 2010.  (Dkt. Nos. 50-53.)  In total, the parties combined have submitted approximately 90 pages of argument discussing the proper construction of 15 different claim terms, including the means-plus-function limitation "means for storing and retrieving a record on or in a physical medium" discussed in this brief.  (*Id.*)  A hearing on the issue of the proper construction of these 15 claim terms has not been scheduled yet.

### B.    Overview Of The '500 Patent

The relevant independent claims of the '500 patent are claims 1 and 10.  Claim 1 is a system claim written in means-plus-function format, and claim 10 is a method claim.  Generally, these claims purport to cover both a system and a method of purchasing downloadable media on the Internet.  (Exh. A at Abstract.)  Instead of purchasing this item directly through the Internet, the buyer goes to a retail store to pay for the item and then later downloads the material using a passcode/password provided at the retail store.  (Exh. A at Col. 5:3-31.)  The following figure is illustrative of this concept.

---

[1] While undisputed, the facts presented in this section are not determinative to the resolution of this motion.  Rather, this background section is intended merely to provide the Court with a brief overview of the case and the events leading up to Defendants' Motion for Summary Judgment.  The eight undisputed material facts on which Defendants' motion to dismiss is ultimately based are identified in Section III below.   Defendants' motion for summary judgment should be granted based on the uncontested facts therein.

DM_US:23168772_1



(Exh. A at Figure 1.)

As shown in Figure 1 from the '500 patent, the method starts with a merchant of downloadable media. The merchant makes its downloadable item available on the Internet. (Exh. A at Col. 8:45-47.) However, potential customers do not purchase the item over the Internet. Instead, they go to a physical retail location that sells an item that corresponds to the downloadable item. (Exh. A at Col. 8:51-54.) In the figure, this is a CARD that contains the Internet address of the downloadable item as well as a passcode/password that the customer can use to download the item over the Internet. (Exh. A at Col. 5:22-34.) The CARD is purchased in an over-the-counter transaction. (Exh. A at Col. 8:53-54.)

Subsequently, the customer can use a computer and go to the Internet address of the downloadable item. In order to retrieve said downloadable item, the customer enters the passcode/password from the CARD. If the passcode/password is approved, the customer is able to download the item. (Exh. A at Cols. 8:58-53; 9:62-65.)

### C.    Prosecution History Of The '500 Patent

On June 21, 2000, Mr. Driessen, acting *pro se*,[2] filed U.S. Provisional Patent App. No. 60/213,673 naming himself as the sole alleged inventor. (Exh. B.) Thereafter, on August 1, 2000, Mr. Driessen filed U.S. Patent App. No. 09/630,272 claiming priority to the provisional application and again naming himself as the sole alleged inventor. (Exh. C.)

---

[2]    In 2000, apparently, Mr. Driessen was a law student.

DM_US:23168772_1

During the prosecution, Mr. Driessen amended both the specification and the claims numerous times. The PTO first issued an Office Action rejecting all claims in September 2003. (Exh. D.) In December 2003, Mr. Driessen cancelled all of the original claims submitted in the original specification and added 10 new claims in response to the Office Action. (Exh. E.) This amendment was the first time that the limitation "means for storing and retrieving a record on or in a physical medium" appeared in a claim, despite the fact that there was no corresponding structure contained in the original disclosure. An additional four claims were added by amendment in January 2004. (Exh. F.)

A subsequent Office Action rejecting all the newly added claims was issued in March 2005. (Exh. G.) On June 17, 2005, Mr. Driessen responded to the most recent Office Action by making substantial amendments to the claims and the specification. (Exh. H.) In his Response, Mr. Driessen first introduced the limitations of "sending a payment message as a response to said in person transaction either directly or through other computers on said network to said selling computer on said network" and "causing an authorization message to be created on said selling computer in or as a result of said payment message that comprises at least said specification of said product and authentication based on cryptographic key(s), said selling computer being programmed to receive said authorization message for verification of said authentication." (*Id.*) These limitations, which were added nearly five years after the provisional application was filed with the PTO, were not reflected in the original specification. Nevertheless, the PTO issued a Notice of Allowability on September 27, 2005, allowing 15 of the 22 pending claims. (Exh. I.) The '500 patent subsequently issued on February 21, 2006. (Exh. A at front page.)

## III.    STATEMENT OF UNDISPUTED, MATERIAL FACTS

1.     Defendants are accused of infringing claims 1- 4, 7, 10, and 12-15 of U.S. Patent No. 7,003,500 ("the '500 patent"). (Dkt. No. 43 at 2.)

2.     Claim 1 of the '500 patent includes the claim limitation "means for storing and retrieving a record on or in a physical medium." (Exh. A at Cols. 10:18-10:42.)

3.    Claims 2, 3, 4, and 7 are dependent on claim 1.  (Exh. A at Cols. 10:43-11:30.)

4.    There is no corresponding structure in the specification that is associated with the function of "storing and retrieving a record on or in a physical medium."  (Exh. A.)

5.    Claim 10 of the '500 patent includes the claim limitation "sending a payment message as a response to said in person transaction either directly or through other computers on said network to said selling computer on said network."  (Exh. A at Col. 12:9-12.)

6.    Claim 10 of the '500 patent includes the claim limitation "causing an authorization message to be created on said selling computer in or as a result of said payment message that comprises at least said specification of said product and authentication based on cryptographic key(s), said selling computer being programmed to receive said authorization message for verification of said authentication."  (Exh. A at Col. 12:13-18.)

7.    Claim 10 of the '500 patent includes the claim limitation "causing selling computer, as a result of said selling computer being programmed, to ensure that said authorization message was created using said cryptographic key(s)."  (Exh. A at Co. 12:19-22.)

8.    There is no written description in the disclosure as originally filed that describes either of the two features in Material Facts Nos. 5, 6 and 7.  (Exh. C.)

9.    Claims 12, 13, 14, and 15 are dependent on claim 10.  (Exh. A at Col. 12:48-65.)

## IV.    ISSUES TO BE DECIDED

1.    Whether Defendants are entitled to summary judgment of invalidity for claims 1, 2, 3, 4, and 7 because the limitation "means for storing and retrieving a record on or in a physical medium" is indefinite.

2.    Whether Defendants are entitled to summary judgment of invalidity for claims 10, 12, 13, 14, and 15 because they contain limitations that lack written description support.

## V.    ARGUMENT

### A.    Legal Standard For Summary Judgment

Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is as appropriate in a patent case as it is in any other case." *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (quotation marks omitted).

The analysis of indefiniteness under 35 U.S.C. § 112, ¶ 2 is a question of law that is "drawn from the court's performance of its duty as the construer of patent claims." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (quoting *Atmel*, 198 F.3d at 1378). As such, the determination of the corresponding structure for a means-plus-function limitation in a definiteness inquiry is also purely a question of law to be decided by the court. *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004). Although indefiniteness must be proven by clear and convincing evidence, this burden is satisfied if "reasonable efforts at claim construction prove futile." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347-48 (Fed. Cir. 2005) ("By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of validity . . . In this way we also follow the requirement that clear and convincing evidence be shown to invalidate a patent.").

Whether a patent is invalid due to lack of written description is an issue of fact. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) ("Whether a specification

DM_US:23168772_1

complies with the written description requirement of § 112, ¶ 1, is a question of fact.").  But summary judgment is still appropriate when there are no genuine disputed issues of fact that the patent lacks written description support for the disputed claim elements.  *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1379 (Fed. Cir. 2009) (affirming summary judgment of invalidity due to lack of written description); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004) (same).  And while lack of written description must be proven by clear and convincing evidence, "a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification."  *Univ. of Rochester*, 358 F.3d at 927.

### B.    Independent Claim 1 Of The '500 Patent Is Invalid As Indefinite

Under 35 U.S.C. § 112, ¶ 6, a means-plus-function limitation "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  For each means-plus-function claim element, the court must determine "what structure, if any, disclosed in the specification corresponds to the claimed function."  *Cardiac Pacemakers Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002).  "In order to qualify as corresponding, the structure must not only perform the claimed function, but the specification *must clearly associate* the structure with performance of the function."  *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1332 (Fed. Cir. 2005) (quoting *Cardiac Pacemakers*, 296 F.3d at 1113) (emphasis added).  "If … this inquiry reveals that no embodiment discloses corresponding structure, the claim is invalid for failure to satisfy the definiteness requirement of § 112, ¶ 2."  *Cardiac Pacemakers*, 296 F.3d at 1114; *accord B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) ("This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing § 112, ¶ 6."); *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007) ("If there is no structure in the specification corresponding to the means-plus-function limitation in the claims, the claim will be found invalid as indefinite.").  Independent claim 1 fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

7

**1.    There Is No Structure Associated With The Limitation "Means For Storing And Retrieving A Record On Or In A Physical Medium"**

Claim 1 contains the means-plus-function limitation:  "means for storing and retrieving a record on or in a physical medium."  The complete claim reads as follows:

> 1. A payment system for itemized Internet merchandise or itemized downloadable media material objects, comprising:
>
> a retail point of sale establishment;
>
> a customer access point at said retail point of sale establishment;
>
> URL information that is an Internet transaction location of said itemized Internet merchandise or itemized downloadable media material objects;
>
> means for accepting payment through an in person transaction with a customer wherein said payment is designated for purchase of said itemized Internet merchandise or itemized downloadable media material objects;
>
> *means for storing and retrieving a record on or in a physical medium* corresponding to said URL information that is an Internet transaction location of said itemized Internet merchandise or itemized downloadable media material objects;
>
> means for transfer of said physical medium from said retail point of sale establishment to said customer; and
>
> means for Internet transaction authorization on, in, or actuated from said physical medium wherein ownership rights in said itemized Internet merchandise or itemized downloadable media material objects are preselected and transferred to said customer through said transfer of said physical medium.

(Exh. A at Cols. 10:43-61; 11:27-30. (emphasis added).)

There is no structure disclosed in the specification that is clearly associated with performing the recited function of "storing and retrieving a record on or in a physical medium." (Schnurle Decl. at ¶ 7.)  Figures 1-5 of the '500 patent (and the associated description) disclose a CARD or computer diskette that may be used to hold a "record."  (*E.g.*, Exh. A at Cols. 5:1-28; 8:44-64; 9:58-10:8.)  However, these items are the "physical medium" and not the means for "storing and retrieving a record on or in" the "physical medium."  There is no structure disclosed that actually stores or retrieves a record on/from the diskette or the CARD.  For example, a

DM_US:23168772_1

"record" might be recorded on a CARD using a variety of structures (typewriter, printing press, etc.) but none of those structures are disclosed in the specification. (Schnurle Decl. at ¶ 8.) Likewise, there may be many ways of retrieving a "record" from a CARD (optical character recognition scanner, etc.) but, again, there is no structure disclosed in the specification for performing that function. (*Id.*)

Plaintiffs assert that "plastic cards, paper tickets, disks, magnetic strips, bar codes, and any means for recording information" are the corresponding structure for this limitation. (Dkt. No. 51 at 24.) There are a couple of problems with this argument. First, Plaintiffs claim "any means for recording information" provides sufficient structure. This violates the requirement that the requisite structure must be specifically disclosed in the specification and cannot be just any device known to record information. *See Biomedino*, 490 F.3d at 953 ("[A] bare statement that known techniques or methods can be used does not disclose structure.").

Second, and more importantly, Plaintiffs' proposed structures are merely examples of the physical medium where the record can be stored. They are not the structure that performs the storing and retrieving. For example, one of the proposed structures is a magnetic strip. A record can be stored on a magnetic strip, such as one contained on a credit card. The magnetic strip, however, does not write the record on itself, nor is it capable of retrieving the record from itself. Some other apparatus, such as a magnetic card reader, is necessary in order to retrieve the record stored on the credit card. The structures recited by Plaintiffs therefore do not perform the function of "storing and retrieving a record on or in a physical medium." (Schnurle Decl. at ¶ 8.)

The facts in this case closely resemble those in the recent *Biomedino* decision in which the Federal Circuit upheld the district court's finding that a means-plus-function limitation was indefinite. In *Biomedino*, the claim at issue contained the limitation "control means for automatically operating said valving." *Biomedino*, 490 F.3d at 949. The court found that this was clearly a means-plus-function limitation and therefore governed by 35 U.S.C. § 112, ¶ 6. *Id.* at 950 ("When a claim uses the term 'means' to describe a limitation, a presumption inheres that the inventor used the term to invoke § 112, ¶ 6."). In analyzing the specification to locate the

9

corresponding structure, the court could only find a box labeled "Control" in a figure "and a statement that the regeneration process may be 'controlled automatically by known differential pressure, valving and control equipment.'" *Id.* Although the plaintiff put forward evidence that there were many known ways to operate valves, the court found that this was not relevant. Rather, the proper inquiry was "*whether one of skill in the art would understand the specification itself to disclose a structure*, not simply whether that person would be capable of implementing a structure." *Id.* at 953 (emphasis added). And because there was no disclosure in the specification of any specific structure that could carry out the functionality of operating a valve, the claims with this limitation were found to be invalid for indefiniteness. *Id.*

As was the case in *Biomedino*, Mr. Driessen has failed to disclose any structure in the specification that is capable of "storing and retrieving a record on or in a physical medium." And as *Biomedino* teaches, it is not enough that devices capable of carrying out this functionality are well known in the art. Instead, the specification must itself specifically disclose the corresponding structure. Because there is no structure disclosed in the specification that is clearly associated with performing the recited function, following the analysis of *Biomedino*, claim 1 is invalid as indefinite.

### 2. Dependent Claims 2, 3, 4 And 7 Are Also Indefinite

Claims 2, 3, 4, and 7 are dependent on claim 1 and therefore contain all of its limitations, including "means for storing and retrieving a record on or in a physical medium." These dependent claims are therefore invalid as indefinite as well. *Biomedino*, 490 F.3d at 949-53 (claims that depended on independent claim that was indefinite were also invalid).

### C. Independent Claim 10 Is Invalid Due To A Lack Of Written Description

The "purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Ariad Pharms., Inc. v. Eli Lilly & Co.*, No. 2008-1248, slip op. at 29 (Fed. Cir. March 22, 2010) (en banc) (quoting *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000)). As such, the written

description requirement of 35 U.S.C. § 112, ¶ 1 requires patent applicants to describe their invention in sufficient detail in the specification to show that the applicants were in possession, at the time of filing, of what is later claimed. *Gentry Gallery*, 134 F.3d at 1479 ("To fulfill the written description requirement, the patent specification 'must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'") (quoting *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989)); *Ariad*, No. 2008-1248, slip op. at 24 ("[T]he specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.").

An applicant shows that he or she was in possession of the invention "by describing the invention, with all its claimed limitations." *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). Thus, an applicant must use descriptive means in the application, such as words, figures, diagrams, and formulas that fully set forth the claimed invention. *Id.* at 1572. While the exact claim terms need not be used, the specification must set forth an equivalent description of the claimed invention. *Id.* "Yet whatever the specific articulation, the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad*, No. 2008-1248, slip op. at 24.

It is not sufficient for an applicant to only set forth in his or her patent application enough information that the claimed invention would be obvious to one of ordinary skill in the art. *Id.* Nor is it sufficient for an applicant to only set forth enough information to enable one of ordinary skill in the art to practice the claimed invention. *Univ. of Rochester*, 358 F.3d at 921 (explaining that a patent claim could be enabled but still lack an adequate written description). Instead, the written description requirement requires a description of each claim with all of its limitations in the specification, regardless of whether one of skill in the art would have been able to practice the claim on less of a disclosure. *Ariad*, No. 2008-1248, slip op. at 26 ("[R]equiring a written description of the invention plays a vital role in curtailing claims that do not require undue experimentation to make and use, and thus satisfy enablement, but that have not been invented, and thus cannot be described.").

11

Patentees are obligated to describe their invention in sufficient detail in the specification to show that the applicants were in possession, at the time of filing, of what is later claimed. *Gentry Gallery*, 134 F.3d at 1479. The obligation is an essential part of the patent bargain and requires the patentee to describe his or her invention "sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention *at the time of the application*, i.e., that the patentee invented what is claimed." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (emphasis added); *accord ICU Medical*, 558 F.3d at 1377 ("To satisfy the written description requirement, a patent applicant must 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention.'"); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001). In this case, Mr. Driessen failed to live up to his side of the bargain because there is no written description support for certain limitations contained in independent claim 10.

### 1. There Is No Description Of Sending A Payment Message To A "Selling Computer" Nor Creating An Authorization Message In Response To Said Payment Message

The limitations of claim 10 were first added by amendment on June 17, 2005, *more than four years* after the original application was filed. (Exh. H.) Claim 10 requires, *inter alia*, that a payment message be sent to a "selling computer" as a response to an in-person transaction which causes an authorization message to be created and received by said "selling computer." The complete claim reads as follows:

> A method of merchandise transfer on a computer network comprising at least one buyer computer on a network for operation by a user desiring to buy at least one product and at least one selling computer on said network operating for a purpose to sell said product, the method comprising the steps of:
>
> creating specific information that is a transaction location of said product, said product comprising networked merchandise or downloadable media material objects represented on said selling computer;
>
> specifying a price wherein said price is specific to said product on said selling computer;

12

receiving payment of said price through an in person transaction with said user at a retail point of sale location wherein said payment amount is associated to said product;

*sending a payment message as a response to said in person transaction either directly or through other computers on said network to said selling computer on said network;*

*causing an authorization message to be created on said selling computer in, or as a result of said payment message that comprises at least said specification of said product and authentication based on cryptographic key(s); said selling computer being programmed to receive said authorization message for verification of said authentication;*

*causing selling computer, as a result of said selling computer being programmed, to ensure that said authorization message was created using said cryptographic key(s); and*

causing transfer of ownership rights in said product to said user desiring to buy said product by granting access or rights to said user on said buyer computer either directly or through other computers on said network, as a result of said authorization message on said selling computer.

(Exh. A at Cols. 11:60-12:28. (emphasis added).)

Defendants first note that there is no disclosure of anything that corresponds to a "selling computer" in the specification, except as appears in the claims themselves. (Schnurle Decl. at ¶ 11.) The specification is completely silent in this regard, likely because these new claim limitations were added a long time after the original application had been filed. The emphasized limitations above require that the following actions take place: (1) a selling computer receive a payment message as a result of a sale; (2) a selling computer creates an "authorization message" using cryptographic keys as a result of the payment message; and (3) the selling computer must be programmed to receive the "authorization message" it just created; and (4) the selling computer must ensure that the authorization message was created using the aforementioned cryptographic keys. A description of this messaging sequence appears nowhere in the specification. (Schnurle Decl. at ¶ 13.) There is absolutely no discussion of: (1) how a payment message is sent in response to an in person transaction; (2) how the selling computer both *creates* and *receives* the same authorization message; (3) what the difference (if any) is

between "creating" a message using cryptographic keys and "ensur[ing]" that a message was created using cryptographic keys; and (4) what computer receives a "payment message" and from where.  (*Id.*)

There is no genuine dispute of fact that these steps are not disclosed in the original application, let alone the specification in the issued patent.  The patentee was required to have some support in the original specification for the claims he added four years after filing the application in order to prevent the claiming of something he did not invent.  *LizardTech*, 424 F.3d at 1345 (specification must show the patentee had "possession of the claimed invention *at the time of the application*.") (emphasis added); *TurboCare*, 264 F.3d at 1118 ("When the applicant adds a claim or otherwise amends his specification after the original filing date . . . the new claims or other added material *must find support in the original specification.*") (emphasis added).  There is simply no support or disclosure in the specification that describes this process of sending and receiving messages.

An analysis of the disclosed embodiments in the specification confirms that this is the case.  None of the embodiments mention sending "payment messages" to the "selling computer" and creating "authorization messages" as a result of these payment messages.  Figures 1-4, which describe the different embodiments of the alleged invention, illustrate this point.  Figure 1, reproduced *supra* at p. 3, shows two computers – one used by the end-user and one used by the web content dealer.  Because the specification never defines what the "selling computer" is, Defendants are left to guess as to what it could be.  (Schnurle Decl. at ¶ 11.)  Since the selling computer must "operat[e] for a purpose to sell said product," it cannot be the end-user's computer because the end-user does not sell the product.  (Exh. A at Col. 11:60-65.)  Assuming for purposes of this motion that the "selling computer" must be the web content dealer's computer, there is nothing in this figure that shows any messages being sent to the web content dealer in response to an in-person retail transaction.  Instead, the figure only shows the web content dealer distributing the card to the retail establishment and distributing the media to the end-user.  There are no incoming arrows from the "in-person retail transaction" icon to the web

14

dealer that would indicate that his or her computer is receiving a "payment message as a response to said in person transaction," let alone what is done with the message after it is received. Figures 2, 3, and 4 suffer from the same deficiency. Furthermore, the specification's description of these figures is also completely silent as to the claimed messaging process. (Exh. A at Cols. 8:40-9:57.) There is absolutely nothing in the specification that a person of ordinary skill in the art would recognize as the claimed messaging feature. (Schnurle Decl. at ¶ 13). *See Ariad*, No. 2008-1248, slip op. at 24 ("[T]he specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.").

A similar scenario occurred in the aforementioned *TurboCare* case. In *TurboCare*, a patentee amended his specification and also added a new claim that was directed to a shaft seal with a spring that was "interposed between the casing shoulder and the inner surface of the outer ring portion of the ring segment." 264 F.3d at 1117. The original specification, however, only disclosed that the springs could be located at each end of each seal ring segment. *Id.* at 1119. The Federal Circuit found that the original disclosure was "completely lacking in any description of an embodiment in which the spring is located between the casing shoulders and the inner surface of the outer ring portion of the ring segment." *Id.* As such, the court found that a reasonable juror could not find that the "original disclosure was sufficiently detailed to enable one of skill in the art to recognize that [the patentee] invented what is claimed." *Id.* The claim was thereafter found invalid for failing to satisfy the written description requirement. *Id.* at 1120.

Like the situation in *TurboCare*, Mr. Driessen added a new claim during prosecution of the patent that claimed a new feature – in this case a method of creating and exchanging messages – that was not described in the original disclosure. And due to this lack of disclosure, a "person of ordinary skill in the art" would not recognize that the applicant "invented what is claimed." *Gentry Gallery*, 134 F.3d at 1479. As in *TurboCare*, there can be no genuine dispute

that this lack of disclosure renders independent claim 10 invalid for violating the written description requirement.

###    2.    Dependent Claims 12, 13, 14, And 15 Also Lack Written Description Support

Claims 12, 13, 14, and 15 are dependent on claim 10 and therefore contain all of its limitations.  These dependent claims are therefore invalid for lack of written description support. *LizardTech*, 424 F.3d at 1340-47 (claims that depended on independent claim that lacked written description support were also invalid).

## VI.    CONCLUSION

In order to obtain allowance of the asserted claims of the '500 patent, the patentee added claims that are completely unsupported by the written description portion of the patent. Furthermore, the patentee chose to use "means plus function" limitations without providing a disclosure of the corresponding structure.  Thus, Defendants respectfully request that the Court enter judgment declaring asserted claims 1, 2, 3, and 4 of the '500 patent invalid as indefinite under 35 U.S.C. § 112, ¶ 2 and declaring asserted claims 10, 12, 13, 14, and 15 invalid for failure to comply with the written description requirement of 35 U.S.C. § 112, ¶ 1.  Because these issues are case dispositive, Defendants respectfully request that the Court enter judgment dismissing this case with prejudice.

**Hearing Request**:  Defendants request a hearing on this motion at a time available to the Court after this motion is fully briefed.

Respectfully submitted,


Dated:  March 25, 2010          By */s/ James C. Pistorino*
                                James C. Pistorino
                                HOWREY LLP
                                Attorneys for Defendants/Counterclaimants
                                **SONY MUSIC ENTERTAINMENT; TARGET**
                                **CORPORATION; and BEST BUY STORES, L.P.**


Dated:  March 25, 2010          By */s/ Brent O. Hatch*
                                Brent O. Hatch
                                HATCH, JAMES, & DODGE, P.C.
                                Attorneys for Defendant/Counterclaimant
                                **FYE (a.k.a. TRANS WORLD ENTERTAINMENT)**

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 25 day of March, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and further hereby certify that I have served via e-mail a copy of this document to the following non-CM/ECF participant:

Marguerite A. Driessen                         [  ] U.S. Mail
mad@driessenlaw.com                            [  ] Federal Express
305 North 1130 East                            [  ] Hand Delivery
Lindon, UT  84042                              [  ] Telefacsimile
   *Pro Se Plaintiff*                           [X] Other (e-mail)


                                        */s/ James C. Pistorino*
                                         James C. Pistorino

18