IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES L. DRIESSEN, MARGUERITE A. DRIESSEN,<br><br>Plaintiffs,<br><br>vs.<br><br>SONY MUSIC ENTERTAINMENT, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:09-cv-0140-CW<br><br>Judge Clark Waddoups |

## I. INTRODUCTION

Defendants have submitted to the court their joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. 157] Plaintiffs' Third Amended Complaint ("Third Complaint") [Dkt. 154]. As grounds for dismissal Defendants argue that the Third Complaint is defective based on vague and implausible pleading which they argue is both insufficient to satisfy the requirements of Rule 8(a) of the Federal Rules of Civil Procedure and not in compliance with this court's Memorandum Decision and Order of January 17, 2012 [Dkt. 153] dismissing without prejudice Plaintiffs' Second Amended Complaint. The court has considered the parties' briefs on this motion without oral argument and, for the reasons discussed below, orders that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

## II. BACKGROUND

Plaintiffs originally filed their initial Complaint against the Defendants on February 17, 2009. Three years later, on February 17, 2012 and after substantial activity on the docket,

Plaintiffs filed their Third Complaint. In their most recent amendment, Plaintiffs allege that Defendant Sony Music Entertainment's "Platinum Music Pass" is "a copy of [Plaintiffs'] invention because it embodied the practicing of the method claims asserted as well as the system claim asserted" in three patents issued to Plaintiff James L. Driessen or the company Vibme, LLC which he co-owned with Marguerite A. Driessen: U.S. Patent No. 7,003,500 (the "'500 Patent"), U.S. Patent No. 7,636,695 (the "'695 Patent"), and U.S. Patent No. 7,742,993 (the "'993 Patent"), referred to collectively by Plaintiffs as the "'500 Patent Family". [Dkt. 154 ¶¶49, 36-46.] Through Defendants' involvement in the manufacture, distribution, and/or sale in the United States of Defendant Sony Music Entertainment's Platinum Music Pass and "other products [that] are being developed, made, manufactured, and offered for sale by Defendants and/or under Defendants' direct management or control" containing "electronic sell-through itemized merchandise", they are alleged to have engaged in both "[d]irect literal infringement and indirect literal infringement" of nine independent claims (eight method claims and one system claim) and 64 dependent claims from the '500 Patent Family. [Dkt. 154 ¶¶48-49, 51, 57.][1] Defendants moved to dismiss all of the claims except those relating to Claim 10 of the '500 Patent, as to which they filed a Motion for Summary Judgment of Invalidity Based on Lack of Written Description. *See* Mem. Supp. Mot. Dismiss at 9 [Dkt. 158].

In the course of the briefing on Defendants' current Motion to Dismiss, Plaintiffs further honed their claims down to four independent claims: Claims 1 and 10 of the '500 Patent and Claims 3 and 24 of the '993 Patent. Mem. Opp. Mot. Dismiss at 11 [Dkt. 161]; *cf.* Reply Mot. Dismiss at 1 [Dkt. 165]. Accordingly, the court GRANTS Defendants' Motion to Dismiss with

---

[1] "The methods and systems utilized by Sony, Best Buy, Target, and FYE in using, making, selling or offering to sell the Sony Platinum Music Pass and any of the same or substantially similar named or unnamed instrumentalities, products, services, or methods used, developed, made, manufactured, sold, or offered for sale by Sony, Best Buy, Target, and FYE are the basis of both Direct [sic] literal infringement and indirect literal infringement as to the claims outlined in the Infringement sections VII, IX and X of this Complaint." Third Complaint ¶57 [Dkt. 154].

prejudice Count A with respect to Claims 1 and 6 (but not Claim 5) of the '993 Patent and Count B with respect to Claims 1 and 6 of the '695 Patent.

## III. ANALYSIS

In their Third Complaint, Plaintiffs allege both direct and indirect infringement of the patents in the '500 Patent Family. In June of 2012, after briefing on this motion was completed,[2] the Court of Appeals for the Federal Circuit clarified that the pleading standard differs for claims brought under each of these heads and, accordingly, the court addresses them each separately below, concluding that Defendants' Motion to Dismiss should be denied as to Plaintiffs' direct infringement claims and induced infringement claims and granted as to Plaintiffs' contributory inducement claims. *See In re Bill of Lading Transmission and Processing System Patent Litigation ("In re Bill of Lading")*, 681 F.3d 1323 (Fed. Cir. 2012).

### A. Direct Infringement

As in this case, the defendants in *In re Bill of Lading* filed a motion to dismiss the plaintiff's patent infringement claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The defendants argued, as here, and the district court in *In re Bill of Lading* agreed, that the plaintiff had failed to "plausibly allege either direct infringement or indirect infringement" on the face of the complaint under the pleading standards required by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must plead "enough factual matter" to "state a claim that is plausible on its face" when taking all factual, though not merely conclusory, allegations as

---

[2] On September 8, 2012, after completion of briefing but before the scheduled hearing, Plaintiffs submitted their Notice of Supplemental Authority [Dkt. 168] highlighting the Federal Circuit's recent holdings in *In re Bill of Lading*, 681 F.3d 1323 (Fed. Cir. 2012) and the combined decision in *Akamai Technologies, Inc. v. Limelight Networks, Inc. et al.* and *McKesson Technologies, Inc. v. Epic Systems Corp.*, 2012 U.S. App. LEXIS 18532 (Fed. Cir., August 31, 2012), both of which are controlling for the court's analysis of Defendants' current Motion to Dismiss.

3

true) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that the "plausibility" standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). *In re Bill of Lading*, 681 F.3d at 1331.

The Court of Appeals for the Federal Circuit reversed the district court as to the pleading standard applicable to the direct infringement claims and found that the plaintiff had adequately pled direct infringement despite the deficiencies the defendants had identified in the plaintiff's complaint. *Id.* at 1335 (noting the defendants' argument that "the amended complaints are deficient because they do not describe precisely how each element of the asserted claims are practiced by their customers"). In response, the Federal Circuit held that, for a direct infringement claim, "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met. Indeed, a plaintiff need not even identify which claims it asserts are being infringed." *Id.* (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

None of the cases that address the civil pleading standards (such as *Twombly* and *Iqbal*), the Federal Circuit explained, "address the sufficiency of a complaint alleging patent infringement or causes of action for which there is a sample complaint in the Appendix of Forms to the Federal Rules of Civil Procedure." *Id.* at 1334. With reference to Rule 84 of the Federal Rules of Civil Procedure and the Advisory Committee Notes,[3] the court observed that for such cases, and in particular for direct infringement claims in patent cases, "a pleading, motion, or other paper that follows one of the Official Forms cannot be successfully attacked." *Id.* (quoting

---

[3] Rule 84 provides that "[t]he forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." The 1946 Advisory Committee Note reinforces that "the forms contained in the Appendix of Forms are sufficient to withstand attack under the rules under which they are drawn" such that "the practitioner using them may rely on them to that extent."

12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3162 (2d ed. 1997)). Thus, where "parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleading requirements, the Forms control" because "any changes to the Federal Rules of Civil Procedure 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Id.* (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).

The *In re Bill of Lading* court looked, therefore, to Form 18 for the controlling pleading standard, holding that it requires the following:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*Id.* (quoting *McZeal*, 501 F.3d at 1357); *see also Arczar, Inc. v. Navico, Inc.* 2012 U.S. Dist. LEXIS 107754 at *7 (N.D. Okla., Aug. 2, 2012); *Lonestar Document Mgmt, LLC v. Atalasoft, Inc.*, 2012 U.S. Dist. LEXIS 129979 at *5 (E.D. Tex., Sept. 11, 2012).

As in *In re Bill of Lading*, *Arczar*, and *Lonestar*, Plaintiffs in this case meet the pleading requirements established by *In re Bill of Lading* under Form 18 for their claims of direct infringement. Plaintiffs allege jurisdiction [Dkt. 154 ¶¶6-10] and claim ownership of the '500 Patent Family. [*Id.* ¶¶27-35.] Plaintiffs allege that "all Defendants are using, making, manufacturing, selling, and/or offering the invention to distributors and customers across the United States" and lists numerous retail locations that are alleged to carry the Platinum Music Pass within the District of Utah. [*Id.* ¶55]; *see Lonestar*, 2012 U.S. Dist. LEXIS 129979 at *8; *Arczar*, 2012 U.S. Dist. LEXIS 107754 at *10. Plaintiffs further state that they have given the Defendants pre-suit notice of their infringement [Dkt. 154 ¶¶19-25], and in any event they

comply with Form 18 as to notice because Defendants "received notice of [their] alleged infringement when [plaintiffs] served them with this lawsuit." *Lonestar*, 2012 U.S. Dist. LEXIS 129979 at *9; *see also Arczar*, 2012 U.S. Dist. LEXIS 107754 at *10 ("The complaint does not allege that plaintiff gave defendant pre-suit notice of the alleged patent infringement, but courts have not found this to be a fatal pleading defect, as the filing of the complaint is sufficient to give a defendant notice of the alleged patent infringement."). Plaintiffs also demand damages and injunctive relief. [Dkt. 154 ¶192.][4]

Moreover, this case is distinguishable from *Catheter Connection, Inc. v. Ivera Medical Corp.*, 2012 U.S. Dist. LEXIS 135720 (D. Utah, Sept. 21, 2012). In *Catheter*, Judge Campbell considered a complaint for patent infringement in light of *In re Bill of Lading*, holding that "even if Form 18 provides limited requirements for the satisfaction of pleading standards, Plaintiffs' complaint still fails to meet them." *Id.* at *3. Because "even the existence of the [infringing invention]" was "only pled on 'information and belief'", the plaintiffs did not adequately plead that the defendant "produces a device that achieves the same purpose as Plaintiffs' patented device." *Id.* at *3-*4. The question of whether that is a deficiency that would be fatal to a complaint under *In re Bill of Lading* need not be considered in this case because Plaintiffs have specifically identified the Platinum Music Pass and other similar products that "are being developed, made, manufactured, and offered for sale by Defendants and/or under Defendants' direct management or control" containing "electronic sell-through itemized merchandise" as the infringing invention. [*See, e.g.* Dkt. 154 ¶57.]

---

[4] Furthermore, in addition to Plaintiffs' efforts to comply with the pleading requirements of *Twombly* and its progeny by submitting their 91 page Third Complaint attempting to "make each element of each claim . . . completely inclusive" as required by this court's Order dated January 17, 2012 at 4 [Dkt. 153], the Third Complaint also contains discrete paragraphs conforming literally to the notice pleading requirements of Form 18. [*See* Dkt. 154 ¶¶188-191.]

The court therefore DENIES Defendants' Motion to Dismiss as to Plaintiffs' claims for direct infringement, including Claim 5 of the '993 Patent.[5]

**B.      Indirect Infringement**

In addition to Plaintiffs' claims for direct infringement, the Third Complaint also brings claims of both inducement and contributory indirect infringement against Defendants. As to indirect infringement, "Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement." *In re Bill of Lading*, 681 F.3d at 1336. "No adequate justification exists for holding indirect infringement claims, which contain additional elements not found in direct infringement claims, to the standard of *McZeal* and Form 18. Thus, the general principles of *Twombly* and *Iqbal* must be applied to indirect infringement claims." *Id.* at 1336-37 (quoting *Tech. Licensing Corp. v. Technicolor USA, Inc.*, 2010 U.S. Dist. LEXIS 113292 at *2 (E.D. Cal., Oct. 18, 2010)).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). To survive a motion to dismiss, a complaint "must plead 'enough factual matter' that, when taken as true, 'states a claim to relief that is plausible on its face.'" *In re Bill of Lading*, 681 F.3d at 1331 (quoting *Twombly*, 550 U.S. at 570)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" but is not "akin to a probability requirement." *Id.* (quoting

---

[5] Defendants also argue that infringement claims relating to Claim 5 of the '993 Patent should be dismissed because "the 91 pages of the Complaint lack any factual allegation against Sony to support such a charge." Mem. Supp. Mot. Dismiss at 4 [Dkt. 158]. In their Opposition, Plaintiffs concede that "in their haste to plead every element of every claim, specific facts were inadvertently omitted from the [Third Complaint] as to Claim 5." Mem. Opp. Mot. Dismiss at 3 [Dkt. 161]. However, because under the pleading standard established by *In re Bill of Lading* "a plaintiff need not even identify which claims it asserts are being infringed," much less provide factual allegations supporting each element of the claim, Claim 5 of the '993 Patent is not dismissed.

*Iqbal*, 556 U.S. at 678). In "[d]etermining whether a complaint states a plausible claim for relief", which is a "context-specific task," *Iqbal*, 556 U.S. at 679, the court must make all reasonable inferences in the favor of the non-moving party, distinguishing well-pleaded facts from conclusory allegations. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). "This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged." *United States v. Ledford*, 2009 U.S. Dist. LEXIS 48441 at *9 (D. Colo. 2009).

### 1. *Indirect Infringement by Inducement*

Plaintiffs allege only that Sony—and not the retail Defendants (contrary to Defendants' apparent continued confusion about this, *see* Reply Mot. Dismiss at 4 [Dkt. 165])—has engaged in induced infringement. [Dkt. 154 ¶182(a).] "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (2012). "Liability under § 271(b) requires knowledge that the induced acts constitute patent infringement." *In re Bill of Lading*, 681 F.3d at 1339 (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) (internal quotation marks omitted)). This means that "specific intent and action to induce infringement must be proven." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (holding, en banc, that a "plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements").

More specifically, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* at 1306. But "[w]hile proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Id.* (quoting *Water Technologies Corp. v.*

*Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)). And in any event, Plaintiffs do not need to "prove [their] case at the pleading stage"; rather, on a motion to dismiss, "[a]ll reasonable inferences" should be drawn from the factual allegations in the complaint in favor of the non-moving party. *In re Bill of Lading*, 681 F. 3d 1323 at 1339-1340. In sum, "as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible," then "[f]erreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *Id.* at 1340 (quoting *Watson Carpets & Floor Covering, Inc. v. Mohawk Indus.*, 648 F.3d 452, 458 (6th Cir. 2011)).

In addition, as alluded to above, "[a]n important limitation on the scope of induced infringement is that inducement gives rise to liability only if the inducement leads to actual infringement." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 2012 U.S. App. LEXIS 18532 at *18 (Fed. Cir., Aug. 31, 2012) (citing cases for the "well settled" principle that "there can be no indirect infringement without direct infringement"). The existence of an "actual infringement" does not, however, require a single direct infringer. *Id.* at *32 (noting that "a party may be liable for inducing infringement even if none of the individuals whose conduct constituted infringement would be liable, as direct infringers, for the act of infringement that was induced").

This rule—that "induced infringement can be found even if there is no single party who would be liable for direct infringement," *id.* at *47—differs substantially from the rule laid out in *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) that was controlling at the time of this court's Order dated January 17, 2012. [Dkt. 153.] In that Order, the court quoted *BMC* for the rule that "[i]ndirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement." Order at 2 [Dkt. 153] (quoting *BMC*, 498 F.3d at 1379). Even under that rule, however, the Court of Appeals for

the Federal Circuit clarified in June 2012 (i.e. subsequent to this court's Order) that "a plaintiff need not identify a *specific* direct infringer," in a claim for induced infringement, "if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading*, 681 F.3d at 1336 (emphasis in original). But in *Akamai*, the Federal Circuit went further on August 31, 2012, expressly overruling *BMC* on the basis that its holding that a single party direct infringer was necessary as a predicate to a claim of induced infringement "is wrong as a matter of statutory construction, precedent, and sound patent policy." 2012 U.S. App. LEXIS 18532 at *11.

In overruling *BMC*, the Federal Circuit in *Akamai* held that "all steps of a claimed method must be performed in order to find induced infringement, but that it is not necessary to prove that all the steps were committed by a single entity." *Id.* at *11-12. The court reasoned that "[i]f an entity has induced conduct that infringes a patent, there is no justification for immunizing the inducer from liability simply because no single party commits all of the components of the appropriative act." *Id.* at *40. Examining the legislative history, general tort principles, and prior caselaw, the court explained that "[i]t is unlikely that Congress intended to endorse the 'single entity rule', at least for the purpose of induced infringement, which would permit ready evasion of valid method claims with no apparent countervailing benefits." *Id.* at *49.[6] Instead, the inquiry now focuses on the predicate existence of an "actual infringement" that has been induced rather than an induced single direct infringer; "an obvious infringement should be remediable, even though there is no [single] direct infringer." *Id.* at *26 (internal quotations omitted). Also, parenthetically, the court in *Akamai* observed that "inducement does not require that the induced party be an agent of the inducer or be acting under the inducer's direction or control to such an

---

[6] "At the end of the day, we are persuaded that Congress did not intend to create a regime in which parties could knowingly sidestep infringement liability simply by arranging to divide the steps of a method claim between them." *Id.* at *48.

10

extent that the act of the induced party can be attributed to the inducer as a direct infringer." *Id.* at *17.

Stated succinctly, then, after *Akamai*, liability for induced infringement is now premised on a showing that (1) the alleged inducer knew of the patent, (2) it induced the performance of the steps of the method claimed in the patent or, alternatively, it performed some or all but one of the steps of the method claimed in the patent and induced another party or parties (including end-users) to perform additional step(s) of the claimed method, and (3) those steps were performed such that an actual infringement occurred. *Id.* at *49-50. The court addresses each of these elements in reverse order below.

Drawing all reasonable inferences from the factual allegations in the Third Complaint in favor of the non-moving party persuades the court that, for purposes of surviving the motion to dismiss, Plaintiffs have sufficiently pled a claim for induced infringement. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). The *inferences of liability* available based on the factual allegations must be plausible, not the factual allegations themselves. *Ledford*, 2009 U.S. Dist. LEXIS 48441 at *9 ("This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged.").

First, the allegations of the Third Complaint give rise to the plausible inference that, either between the Retailers and the end-users collectively or on the part of each of the Retailers individually, an actual infringement has occurred. In evaluating Plaintiffs' factual allegations, references to any control exerted by Sony over the Retailers in setting up an underlying direct infringement may be ignored as gratuitous in interpreting the Third Complaint. *Akamai*, 2012

U.S. App. LEXIS 18532 at *17 (clarifying that, under the new rule, theories of vicarious liability, agency, or control are neither necessary nor particularly relevant for claims of induced infringement though they still may be relevant for direct infringement analysis). Specifically, Plaintiffs allege that "a Music Pass product, with Sony's name on it" became "available for presentation and vending in Retailer's stores." [Dkt. 154 ¶182(a)(iii)(4).] Plaintiff James Driessen was then "able to purchase accused infringing devices at the Retailers locations," essentially putting him in the shoes of an innocently directly infringing end-user. [Dkt. 154 ¶182(a)(vi).] In addition, Plaintiffs refer to both the end-user's use of the Platinum Music Pass to download online digital rights and to the Retailers' "inclusion of the retail component into [the Platinum Music Pass's] online digital rights ownership systems and services" (or their use or offer for sale of the Platinum Music Pass) in their allegations as to an underlying direct infringement. [Dkt. 154 ¶182(a)(iii)(2); ¶182(a)(v)] *compare Lone Star*, 2012 U.S. Dist. LEXIS 129979 at *10 (generic allegation that "end users in the Eastern District of Texas" are underlying direct infringers "is sufficient to survive a Motion to Dismiss").

Second, Plaintiffs' descriptions and allegations of Sony's actions relating to the manufacture, use and offer/sale of the Platinum Music Pass to the Retailers allow the court to draw a reasonable inference that Sony induced the similarly inferable actual infringement discussed above. "Sony intends that which is the natural and probable consequences of its acts, to incorporate and encourage the retail component of online digital rights ownership to retailers knowing that such activities will infringe Plaintiffs' patents." [Dkt. 154 ¶182(a)(iii)(1).] But Plaintiffs do not stop with "naked assertions devoid of further factual enhancement" in pleading Sony's specific intent and actions to induce infringing acts. *Iqbal*, 556 U.S. at 678. Rather, Plaintiffs provide supporting factual allegations that the court finds sufficient to "unlock the

doors of discovery," *id.*, or, at a minimum, claim construction for purposes of Defendants' pending Motions for Summary Judgment. *See Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 890 (N.D. Cal. 2011) (noting that "[a] motion to dismiss is not the proper time to initiate claim construction").

Plaintiffs allege that "Sony has demonstrated specific intent to induce through encouragement to use retail presentations." [Dkt. 154 ¶182(a)(ii).] Sony does this by providing the Retailers with the Platinum Music Pass and encouraging them to offer and sell it to end-users. [Dkt. 154 ¶182(a)(iii)(2), (3); ¶182(a)(viii), (vix).] Specifically, "[e]ncouragement of the Retailers by Sony was evinced through at least their announcement of the 'authorized' Retailers in Sony's 2008 press releases about the launch of the Music Pass products. The press releases also described how the authorized Retailers were going to sell the Music Passes." [Dkt. 154 ¶182(a)(iii)(4).] "It is enough that the inducer causes, urges, encourages, or aids the infringing conduct and that the induced conduct is carried out." *Akamai*, 2012 U.S. App. LEXIS 18532 at *17 (internal alterations and quotations omitted).

Finally, the Third Complaint alleges facts sufficient to allow the court to draw the reasonable inference that Sony "knew or should have known" that its actions in manufacturing and promoting the Platinum Music Pass to Retailers, and encouraging them to present and sell it to customers, would "induce actual infringements." *DSU Med. Corp.*, 471 F.3d at 1305. Such an inference is premised in the requirement that Sony knew (or should have known) of Plaintiffs' patent(s). *Akamai*, 2012 U.S. App. LEXIS 18532 at *49-50. As to this knowledge, the Third Complaint alleges that "Plaintiffs sent letters, emails, and made phone calls to Sony informing them about the patent along with a proposal to abate infringement and Sony continued to market, sell, and distribute the Sony Platinum Music Pass. Therefore Sony Music Entertainment, knew

(or reasonably should have known) about the '500 Patent Family at that time." [Dkt. 154 ¶182(a)(vii).] More factual detail is provided as to this allegation of knowledge in previous paragraphs of the Third Complaint that are expressly incorporated by reference into paragraph 182, including but not limited to paragraphs 19-25 and 61(b). Also, Sony "knew of the patent(s) at issue herein at least as early as the filing of this lawsuit," [Dkt. 154 ¶182(a)(vii)], by which it would appear that Plaintiffs are referring to the original filing of the lawsuit in February 2009, [*cf.* Dkt. 154 ¶¶24, 61(b)].

Defendants, however, argue that Plaintiffs only ever mention specific communications about the '500 Patent or employ "the vague phrase '500 Patent Family." Mem. Supp. Mot. Dismiss at 8 [Dkt. 158]. Defendants also argue that Plaintiffs are being "intentionally vague" in using the phrase "the Sony Group" at various places in the Third Complaint with reference to Sony's knowledge about the Plaintiffs patents. *Id.* at 9. The court finds these arguments unpersuasive to negate a reasonable inference that Sony knew or should have known of the patents based on the allegations in the Third Complaint.

Paragraph 19 alleges that Plaintiffs contacted specifically Sony Music Entertainment in August of 2000 "notifying them of the ['500] patent application and the key inventive steps and properties of its usefulness." Paragraph 20 further alleges that Plaintiffs sent Sony another letter in February 2006 "notifying them that Plaintiff James Driessen had received a notice of issue for the '500 Patent and inviting Defendants to license under the 'Vibeme' brand owned by Plaintiffs." Plaintiffs also allege that they sent other communications about the patents to Defendants. [Dkt. 154 ¶¶21-22.] Paragraph 24 alleges Plaintiffs again sent Defendants a warning/invitation to license letter on February 18, 2009 (including specifically to Sony Music Entertainment). In fact, Plaintiffs allege that Defendants each responded with correspondence

confirming they had reviewed Plaintiff's February 18, 2009 letter. [Dkt. 154 ¶25.] In sum, these allegations allow the court to draw the reasonable inference that "all Defendants knew of the '500 Patent and '500 Patent Family no later than the date of the original filing of this lawsuit." [Dkt. 154 ¶61(b)]; *cf. In re Bill of Lading*, 681 F3d 1323 at 1345 (holding that an allegation in the complaint that defendant "became aware of the [patent], at the latest, in March of 2009 when it was served with the complaint" was sufficient for plaintiff to survive a motion to dismiss a claim of induced infringement).

For the reasons discussed above, the court DENIES Defendants' Motion to Dismiss Plaintiffs' claims for induced infringement.

### 2. *Contributory Infringement*

Plaintiffs have failed to meet the pleading standards required by *Twombly* and its progeny in their claim for contributory infringement. "Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of a patent." *In re Bill of Lading*, 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)). "For purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *Id.* at 1338 (emphasis in original). The Third Complaint, however, does not "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Id.* at 1337. Rather, the Third Complaint merely provides the single conclusory allegation that "the retail presentation of specific online digital rights component (i.e. wherever Music Pass standard products are sold at retail) has no substantial non-infringing uses." [Dkt. 154 ¶182(b)(iv).] "Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 678. Thus, whether this "naked assertion devoid of further factual enhancement" is in fact true will not be tested in this lawsuit because, standing alone, it cannot "unlock the doors of discovery" for Plaintiffs, *id.*, particularly in light of this court's previous Order that "this will be Plaintiffs' last attempt to modify their complaint." Order dated January 17, 2012 at 3 [Dkt. 153].

Defendants' Motion to Dismiss as to Plaintiffs' claims for contributory infringement is therefore GRANTED. Moreover, the contributory infringement claims are dismissed with prejudice in keeping with the court's previous Order. [Dkt. 153 at 4.]

## CONCLUSION

As previously stated, Defendants' Motion to Dismiss [Dkt. 157] is GRANTED in part and DENIED in part. As a result of the parties' voluntarily narrowing the claims through the course of the briefing on Defendants' Motion to Dismiss, the court GRANTS Defendants' Motion to Dismiss with prejudice Count A with respect to Claims 1 and 6 of the '993 Patent and Count B with respect to Claims 1 and 6 of the '695 Patent. The court also GRANTS Defendants' Motion to Dismiss as to Plaintiffs' contributory infringement claims. The Motion to Dismiss, however, is DENIED as to Plaintiffs' direct infringement and induced infringement claims.

DATED this 23rd day of October, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge