**JAMES L. DRIESSEN, PRO SE,** jd@driessenlaw.com**, USB #09473**
MARGUERITE A. DRIESSEN, PRO SE, mad@driessenlaw.com
305 N 1130 E, LINDON, UT 84042
PHONE (801)796-6924
FAX (801)785-2744

# UNITED STATES DISTRICT COURT

### District of Utah, Central Division

|  |  |
|---|---|
| James L. Driessen and Marguerite A. Driessen | **PLAINTIFF'S REPLY BRIEF ON RULE 46 OBJECTION PRESERVING ISSUES** |
| Plaintiffs | |
| V. | CASE NUMBER:  2:09-cv-00140 |
| Sony Music Entertainment; Target Corporation; Best Buy Stores L.P. (previously sued as Best Buy Co., Inc.); and FYE (a.k.a. Trans World Entertainment) | Judge: Clark Waddoups |
| Defendants | |

## INTRODUCTION

In its Order of November 8, 2012, the Court ordered Defendants to brief "the issues raised in Plaintiffs' Rule 46 Objection."  [Dkt. No. 177], and provided that Plaintiffs would have an opportunity to respond to Defendants' brief.  Substantively, however, DEFENDANTS' RESPONSE TO PLAINTIFFS' RULE 46 OBJECTION contains approximately 6 pages of "Background" and "Discussion" essentially laying out their own objections to this Court's October 23, 2012 Order in addition to providing their response to the two particular issues Plaintiffs raised in the Rule 46 Objections . [Dkt. No. 182].  While Local Rules DUCiv 7-1(b)(1)

1

clearly state "Motions Are Not to Be Made in Response or Reply Memoranda" evidentiary objections are permitted in such a briefing and Rule 46 does not set a time limit for making such objections.  Thus, to the extent that Defendants' brief is construed as raising evidentiary objections to the pleading of no substantial non-infringing uses, and to allowing this case to proceed toward a meaningful process for the selection of representative claims, Plaintiffs brief the new issues raised in Defendants' objections as follows:

## I. BACKGROUND

In the "BACKGROUND" section of their response, Defendants attempt to blame Plaintiffs for this case's lengthy history and for the manner in which it has evolved.  [Dkt. 182] As an initial matter, Plaintiffs note that Defendants were completely satisfied with the federal Form-18 notice pleading standard adhered to in the original complaint.  In fact *all* Defendants answered that original complaint.  It was only after the filing of the First Amended Complaint [Dkt. 85] which merely added claims from two newly issued patents,[1] that Defendants decided to take advantage of the opportunity to file their first Motion to Dismiss.  [Dkt. 88, Mem. Supp Dkt. 89]  In that Motion, Defendants raised for the first time emerging issues in patent litigation regarding the heightened standards under *Iqbal*[2] and *Twombly*[3] as they pertain to the pleading of patent infringement, and the litigation of method claims that require multiple actors to perform all of the steps of an asserted method.[4]

---

[1] The two new patents are in the same family of patents as the parent patent in the original complaint, and address claims involving the same product and the parties.  FAC [Dkt. 85].

[2] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  This opinion was  issued July 29, 2009, after the filing of the original complaint in this case.

[3] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

[4] See On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331 (Fed. Cir. 2006); BMC Res. Inc. v. Paymentech, L.L.P., 498 F.3d 1373, 1379–81 (Fed. Cir. 2007); Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1329 (Fed. Cir. 2008).  See also Centillion Data Sys. L.L.C. v. Qwest Commc'ns Int'l, Inc., 631 F.3d 1279 (Fed.

After this court dismissed the SAC, granting Plaintiffs leave to amend, Plaintiffs filed their Third Amended Complaint, and Defendants filed their Joint Motion to Dismiss and the Joint Motions for Summary Judgment, and the Court set Oral Argument for October 4, 2012. The Plaintiffs' filing of a NOTICE OF BINDING PRECEDENT FROM FEDERAL CIRCUIT prompted this Court to reconsider some of these issues at the pleading stage, cancel the October Oral Argument, and issue its Order of October 23, 2012, to which Plaintiffs filed their Rule 46 Objections, focusing on two issues.  First, while Plaintiffs are not opposed to the process of selecting representative claims, focusing the issues in this case, we objected to the dismissal with prejudice of claims not chosen as representative.  Second, we objected to the dismissal with prejudice of the Contributory Infringement causes of action.  Defendants were directed to address the issues raised in those objections.  Although Defendants took considerable license with respect to the matters contained in their brief, we will direct our reply to the new matters raised in their response.

## II. DISCUSSION

### *The Dismissal with Prejudice of All but Representative Claims*

As Plaintiffs acknowledged in their Rule 46 Objections, the use of representative claims is well known and is supported in all federal jurisdictions, and also is recommended by the FJC for patent infringement case management.[5]  The nature of Plaintiffs' objection was twofold. First, Plaintiffs objected to the Court's assertion that Plaintiffs had *stipulated* to the selection of

---

Cir. 2011) (A system claim, on the other hand, is directed to what is doing the performing or the components that are performing the steps of a method.)

[5] Exhibit 1 – Patent Case Management Judicial Guide, Peter S. Menell; Lynn Pasahow; James Pooley; Matthew Powers 2009, 650 pages. Broken into 3 parts Exhibit 1A, 1B,and 1C)  In fact Plaintiffs have repeatedly pled in their requests for Markman Hearings that this case should follow the guidelines set forth in the FJC guide wherever possible, [Dkt. 54, 55, 60, 169].

the five identified claims as representative claims.  We did not.  In their reply, Defendants cited

no place in the pleadings or hearings in which they could assert that we did.[6]

The second point Plaintiffs raised was that even if we had stipulated to the choice of the

five identified claims as representative claims, there is no basis in precedent or in this case for

the dismissal with prejudice of all of the other claims.[7]  In their reply, Defendants cited no

authority for the proposition that non-representative claims are to be dismissed at all, let alone

with prejudice.  Furthermore, Defendants' citation to the Court's warning that this would be the

Plaintiffs' last opportunity to amend their Complaint as support for the blanket dismissal of all

non-representative claims is inapposite.  The Court did *not* find that the claims dismissed in this

section failed to meet either the instructions articulated in the Court's January Order or the

pleading standards as understood given the subsequent decisions of the Federal Circuit.  The

Court dismissed those claims *solely* because they were not among those to which it found

Plaintiffs had stipulated as representative.

The remainder of Defendants' discussion regarding the dismissal of all but the

representative claims in this section similarly is inapposite.  Plaintiffs never even suggested that

they should be able to sell individual claims of the patent.  None of this argument made by

---

[6] Defendants are patently erroneous, disingenuous even, in asserting that Plaintiffs only opposed their Motion to Dismiss with respect to four claims.  [Dkt. 157, Mem., Dkt. 158].  Defendants requested that the 69 claims be dismissed with prejudice and went on to argue that causes of action as to patent claims rise or fall together with dismissal of any one claim.  Obviously, Plaintiffs disagree with this interpretation that dismissal of one claim ultimately results in dismissal of all claims.  Furthermore, Plaintiffs memorandum clearly discussed that the four claims would be better representative claims than Claim 10, as to only the *issues* identified by Defendants. [Dkt. 161 pg. 11].

[7] Plaintiffs do not seek to maintain the remainder of the claims to "relitigate" them at a later date, as Defendants assert.  Plaintiffs are entitled to maintain all properly pleaded claims for the determination of damages.  It is simply that the resolution of the issues in the representative claims probably would resolve all of the justiciable issues thus far identified by the parties in this case: the definition of terms, the construction of the claims, and the determination of the facts necessary to litigate the representative claims would be applied to all other claims.  None of those items would need to be relitigated.

Defendants has anything to do with the process for the selection of representative claims, or has any effect on the remainder of the complaint.

Finally, Defendants now take the position that they did not agree to use representative claims.  If that is the case, then Defendants agree with Plaintiffs that none of the parties have stipulated to the five representative claims identified by the Court, and hence the Court – by its own reasoning – has no justification for the dismissal of all but those five claims and they must be brought back in.  Then, once Defendants answer the complaint, the case can finally move into the case management phase in which the issues regarding claim construction can be identified and the parties can be ordered to select the issues to be addressed in the Markman hearing, including which claims could be selected as representative of those issues moving forward. [Exhibit 1, FJC Patent Case Management Judicial Guide @ Chpt. 5].

### *The Dismissal of all Contributory Infringement Claims*

The second objection Plaintiffs raised in their Rule 46 filing was to the Court's dismissal with prejudice of all claims under the Contributory Infringement Causes of Action.  The Court found that Plaintiffs had pleaded only the conclusory statement that there were no substantial non-infringing uses, and had not pleaded sufficient factual detail in support of that allegation to withstand Defendants' Motion to Dismiss.  The nature of Plaintiffs' objection was twofold: 1) that the court articulated the incorrect standard under *In re Bill of Lading*;[8] and 2) that even under the court's heightened standard, Plaintiffs pleaded sufficient detail to withstand Defendants' Motion to Dismiss.

---

[8] In re Bill of Lading, 681 F.3d 1323 (Fed. Cir. 2012).

As to the latter point, Plaintiffs pointed out in their Rule 46 objections that they pleaded that the Platinum Music Pass is not a staple article of commerce and that the only substantial use of the Platinum Music Pass is to infringe the patent. The objection pointed to several areas in the Third Amended Complaint where relevant product distinctions were made.[9]  Plaintiffs substantively pleaded that the Sony Platinum Music Pass is a retail representation of specific online items for a price and therefore does contribute to the infringement, and that there is no way to use the Sony Platinum Music Pass and *not* sell a specific item.  Furthermore, Plaintiffs' objection specifically noted that other potential uses of the Platinum music pass, such as an "ice scraper, Italian cheese grater, paint masking tool, jimmy for unlocking doors, bookmark, straightedge ruler, grout caulking tool, cake knife, guitar pick, or finger splint, etc, are not substantial.  [Dkt. 173 at fnt 3].  In their response, Defendants did not contest these points, nor did Defendants identify any substantial non-infringing uses of their own.

The remaining point Plaintiffs raised in their objection was that the Court applied the wrong standard in determining that the contributory infringement claims were insufficient under *In re Bill of Lading*.  Rather than require that plaintiffs plead with specificity regarding substantial non-infringing uses that we contend do not exist,[10] Plaintiffs contend that *In re Bill of*

---

[9]See, e.g.TAC[Dkt. 154] at ¶41: "Unlike prepaid or 'stored value' cards, where dollar amounts are loaded onto in-store devices that can be used for subsequent purchases online or at retail (often to be used as 'online bucks' or 'online points), retail presentation of digital rights ownership, as taught in the '500 Patent Family, is for specific items only"; at ¶48: "Plaintiffs allege that electronic sell-through itemized merchandise offered on the Platinum Music Pass constitutes itemized merchandise."; and at ¶133: "The Retailer may accept the direct payment of said price through an inperson transaction at said retail point of sale location, but does so only because the Music Pass is useless without payment."

[10] This is the null set, and plaintiffs argued that since detailing the composition of the null set would be a logical impossibility, having to do so could not be the standard for withstanding a Motion to Dismiss.  Contrary to Defendants' mischaracterization, it is not the holding of In re Bill of Lading that plaintiffs assert is illogical.  Rather, what Plaintiffs assert would be illogical is any interpretation of the holding of that case that would require detailed factual allegations about substantial non-infringing uses that do not exist.

*Lading* simply requires that Plaintiffs do not themselves foreclose contributory infringement causes of action by affirmatively pleading the existence of substantial non-infringing uses.

In their reply, Defendants obviously agree that this is the holding of *In re Bill of Lading* as their reply attempts to assert that Plaintiffs, in fact, have foreclosed contributory infringement by affirmatively pleading the existence of substantial non-infringing uses for the Platinum Music Pass.  Given that Defendants do not contest that this is the pleading standard for contributory infringement claims, Plaintiffs will address this last point.

Defendants' sole assertion that Plaintiffs pleaded the existence of substantial non-infringing uses is that our complaint states that "the other components of the Music Pass (without the retail presentation component) do have non-infringing uses."  [TAC Dkt.154 ¶182(b)(iii)]  It is true that the TAC contains this statement.  However, it is not true that this statement constitutes in any way an admission or acknowledgement that The Sony Platinum Music Pass has substantial non-infringing uses.[11]

The Sony Platinum Music Pass is a single object, but it is an amalgam of specific sub-components that comprise the instrumentalities of novel computer-related business methods that were invented and patented by James Driessen.  Depending upon which of the claims is being

---

[11] Defendants' assertion that the making and distributing of the instrumentalities cannot contribute to infringement is misplaced.  In *Hodosh v. Block Drug Co.*, 833 F.2d 1575 (Fed.Cir.1987), the federal circuit addressed whether a subcomponent of a patented process could have substantial non-infringing uses, and held that a device or product made to infringe a patented method could still subject its manufacture or distributor to liability for contributory infringement even if subcomponents of the accused product had substantial non-infringing uses.  In *Hodosh*, the plaintiff held a process patent on a method of desensitizing teeth with a composition containing potassium nitrate and sued a manufacturer of potassium nitrate toothpaste for contributory infringement. *Id.* at 1576.   Although the accused toothpaste containing potassium nitrate did not of itself directly infringe *Hodosh's* method patent, customers undisputedly did so when using the paste to desensitize their teeth.  *Id.*  Like the Defendants in this case, the alleged infringer in *Hodosh* argued that the focus of the § 271(c) substantial non-infringing use inquiry should be on the ingredient potassium nitrate, which was admittedly a staple article of commerce with numerous non-infringing uses, rather than on the toothpaste as a whole.  The *Hodosh* court rejected that argument and held  that an otherwise infringing product does not automatically escape liability merely because it contains a non-infringing staple component. *Id.* at 1578.

analyzed, those components include, *inter alia*, bar codes, scratch off codes, magnetic strips, plastic cards, and graphic layouts of text and pictures.  Mr. Driessen does not claim to have invented these individual components, and it is those components that Plaintiffs acknowledge -- in the single relevant statement identified by Defendants -- have non-infringing uses.  The complaint clearly and completely explains, and with the level of specificity directed by the Court, that these individual components have no substantial non-infringing use when they are put together as they have been on the Sony Platinum Music Pass to form the retail component of the patented methods.

In their reply, Defendants argue that Plaintiffs' allegations are just like those of R&L Carriers and should similarly fail.  This is simply not the case.  Plaintiffs have not pleaded in the complaint or argued that if you use the Platinum Music Pass in only one of many possible substantial ways that the device will infringe.[12]  Plaintiffs TAC pleads that there are no substantial non-infringing uses because the Card has a price on it and must be sold at retail.  It does not plead that there are substantial non-infringing uses unless the Card is sold at retail.

This is a very important distinction.  The R&L Carriers complaint specifically acknowledged that the accused device had substantial non-infringing uses and only infringed when used in the particular allegedly infringing manner.  This complaint alleges the Sony Platinum Music Pass is comprised of some non-infringing *sub-components*, but when those components are put together into the Music Pass (as they have been) that Card comprises the

---

[12] Elements of the claims include retail sale components. The claimed methods are various novel processes for the retail presentation of specifically itemized online assets for sale at a price.

retail component of the new method Plaintiff James Driessen invented and patented,[13] and it has

no substantial non-infringing uses.

As a final note, Plaintiffs point out that no where in their reply do Defendants assert the

existence of any substantial non-infringing uses for the Platinum Music Pass.  Although they

have not yet answered the TAC, Defendants were given the opportunity to address the issues

raised by Plaintiffs and did not provide the court with even a single substantial non-infringing

use for Platinum Music Pass.

## CONCLUSION

In light of the foregoing, Plaintiffs assert that, in addition to raising new objections to the

Court's October 23, 2012 Order that are inapposite here, Defendants agree with Plaintiffs that

there was no stipulation to a selection of representative claims, and Defendants agree with

Plaintiffs that the proper pleading standard from *In re Bill of Lading* is whether Plaintiffs pleaded

or argued the existence of substantial non-infringing uses of the accused device.  Plaintiffs have

demonstrated that acknowledging that individual sub-components of a device or method may

have substantial non-infringing uses is not an admission that the accused device or

instrumentality as a whole has substantial non-fringing uses.  Ultimately, Defendants have

presented no cogent argument against the court sustaining the Plaintiffs' objections and moving

this case forward.  Plaintiffs therefore respectfully request that the Court sustain Plaintiffs'

objections, deny Defendants' Motion to Dismiss in its entirety, and order Defendants to answer

the Third Amended Complaint.

---

[13] An inventor who patented a new formula ingredient for cough syrup containing FD&C Red #5 cannot sue all manufacturers, distributors, and retailers of FD&C Red #5 for contributory infringement because that dye is a staple of commerce that has substantial non-infringing uses.  However, manufacturers, distributors, and retailers who market an exact replication of the patented formula ingredient cannot escape liability for contributory infringement just because the Plaintiff acknowledges in the complaint that FD&C Red # 5 has substantial non-infringing uses.

Respectfully submitted this _____ 19th day of _____ December, 2012

BY:_____/s/James L. Driessen_____
          For James and Marguerite Driessen, Plaintiffs, Pro Se

NOTICE OF ELECTRONIC FILING
ECF will electronically transmit the Notice of Electronic Filing of PLAINTIFF'S REPLY
BRIEF ON RULE 46 OBJECTION PRESERVING ISSUES to the attorneys and parties
in the case who have registered for e-filing with the court.

___ /s/James L. Driessen_____