IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES L. DRIESSEN, MARGUERITE A. DRIESSEN, <br><br> Plaintiffs, <br><br> vs. <br><br> SONY MUSIC ENTERTAINMENT, et al., <br><br> Defendants. | **MEMORANDUM DECISION & ORDER ON CLAIM CONSTRUCTION AND GRANTING RE-NOTICED MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON INDEFINITENESS AND WRITTEN DESCRIPTION** <br><br> Case No.  2:09-cv-0140-CW <br><br> Judge Clark Waddoups |

## INTRODUCTION

The court implemented a procedure for a focused claim construction process relating specifically to claims relevant to Defendants' previously mooted and then re-noticed **Motion for Summary Judgment of Invalidity Based on Indefiniteness** (Dkt. Nos. 127-29) and **Motion for Summary Judgment of Invalidity Based on Written Description** (Dkt. Nos. 130-32) in its Order dated January 27, 2014 (Dkt. No. 202).

On May 15, 2014, the court heard oral argument on Plaintiffs' Opening Claim Construction Brief (Dkt. No. 207), in which Plaintiffs briefed claim construction specifically of the terms relevant to Defendants' two motions for summary judgment, and Defendants' Response filed together with Defendants' Reply on their motions for summary judgment (Dkt. No. 215). After a recess in the hearing, the court presented the parties with a Proposed Order on Limited Claim Construction for Purpose of Re-Noticed Motions for Summary Judgment, allowed the parties to review it, and then heard further oral argument from the parties as to the

court's recommended findings in that Proposed Order. As a result of this subsequent oral argument, the court found it necessary to take the matter under further advisement rather than enter the Proposed Order at that time.

Shortly after the hearing, on June 2, 2014, the United States Supreme Court issued its opinion in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (as corrected June 10, 2014). The decision in *Nautilus* is controlling for Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness because it changed the previously applicable standard for determining indefiniteness pursuant to 35 U.S.C. § 112(b), as discussed below. The court now rejects its formerly presented Proposed Order and construes the terms as below.

## BACKGROUND

The Factual Background and Procedural History of this case are discussed in previous orders of the court. (*See* Dkt. Nos. 116, 153, 172, 184, 202.) In review, Plaintiff James L. Driessen filed a provisional application[1] with the United States Patent and Trademark Office ("PTO") on June 21, 2000 and then, on August 1, 2000, he filed U.S. Patent App. No. 09/630,272 (the "**'272 Application**"), naming himself as the sole inventor of the system for retail point of sale internet transactions described in the patent application. Plaintiff claims priority to the date of the '272 application. The PTO issued an Office Action rejecting the application in September 2003. Plaintiff amended the application in response to include the claim limitation "means for storing and retrieving a record on or in a physical medium" in claim 1 of the primary patent under review here, U.S. Patent No. 7,003,500 (the "**'500 Patent**"), issued on February 21, 2006. On June 17, 2005 Plaintiff again amended the application to include the terms "payment message," "selling computer," and "authorization message," in claim 10 of the '500 Patent. Plaintiff did not, however, amend the specification to specifically correspond to this or other

---

[1] U.S. Provisional App. No. 60/213,673.

amended or newly added claims and limitations. The applications for the other patents at issue in this lawsuit, U.S. Patent No. 7,636,695 (the "**695 Patent**"), and U.S. Patent No. 7,742,993 (the "**993 Patent**"), were also filed as a continuation of and claiming priority to the date of the '272 application.

Claim 1 of the '500 Patent is a system claim that describes a system of purchasing downloadable media content or merchandise from the Internet through a retail point of sale transaction. This is illustrated generally in Figure 1 from the '500 Patent:



The claimed invention has the benefit of potentially ensuring anonymity when later accessing the specific itemized media content for download using the password or code obtained during the retail point of sale transaction, as transmitted or previously arranged between the media content provider and the retail location. (*See, e.g.*, '500 Patent, Figure 4 [Dkt. No. 154-1].)

3

Thus, a media content provider makes specific media content available at a specific URL or internet address; this URL is correlated to information about this media content at a retail point of sale, and a purchaser can then buy the media content at the retail location using cash or any other payment method acceptable to the retailer. The purchaser receives some kind of proof of sale—a paper ticket, a scratch-off card, smart card, or virtually any other "physical medium"— containing a specific password or code that has been separately correlated, between the retailer and the media content provider, specifically to the itemized media content that the media content provider is making available at a specific internet location or URL, which is also communicated to the purchaser through the physical medium.

"From the computer of their choice" ('500 Patent, col. 5, ll. 24-26 [Dkt. No. 154-1]), the purchaser can then use the password or code to access the specific or itemized media content via the internet at the specific internet address or URL that the media content provider has made available to the retailer relating to the specific content. "The specific internet item on a retail pre-paid card is the new and inventive step that makes this invention different from the prior art." (Pls.' Opp to Defs.' Re-Noticed Mot. Summ. J. of Invalidity Based on Written Description 9-10 [Dkt. No. 206].)[2]

## <u>ANALYSIS</u>

Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness (Dkt. Nos. 127-29) focuses on the means-plus-function claim limitation in claim 1 of the '500 Patent, "means for storing and retrieving a record on or in a physical medium." (*See* '500 Patent, col. 10, ll. 30-31 [Dkt. No. 154-1].) The Motion for Summary Judgment of Invalidity Based on Written Description (Dkt. Nos. 130-32) puts the following terms from claim 10 of the '500 Patent at

---

[2] *Cf.* '500 Patent, col. 1, ll. 30-34 ("This Invention requires non-virtual transactions that take place at a retail point of sale for a means of virtual merchandising.").

issue: "payment message" (*id.* at col. 12, l. 9), "selling message" (*id.* at col. 12, l. 11), and

"authorization message" (*id.* at col. 12, l. 13). The court agrees with Defendants that a finding in

the claim construction process that there is no associated structure for the "means for storing and

retrieving a record on or in a physical medium" element of Claim 1 would invalidate seven

claims of the '500 patent (claims 1 – 7) because it would require granting the Motion for

Summary Judgment of Invalidity Based on Indefiniteness (Dkt. Nos. 127-29). (*See* Def.'s Resp.

to Cl. Const. & Reply on Mots. Summ. J. 1 [Dkt. No. 215].) This would be particularly required

under the newly articulated standard in *Nautilus*, 134 S. Ct. 2120.

Construing the claim elements of Claim 10 of the '500 Patent would not result in

immediate invalidity of any claims but will allow the court to consider the Motion for Summary

Judgment of Invalidity Based on Written Description (Dkt. Nos. 130-32). If the Court determines

that the claim elements referred to above at issue in Claim 10 of the '500 Patent lack written

description, "that would invalidate a further six (6) claims of the '500 patent, all twenty-seven

(27) claims of the '695 patent, and all forty-one (41) claims of the '993 patent. As a result, only

Claims 8 and 9 of the '500 patent would not be invalidated by the motions currently before the

Court." (Def.'s Resp. to Cl. Const. & Reply on Mots. Summ. J. 2 & n.2 [Dkt. No. 215].)

I.      **Indefiniteness and Construction of the Means-Plus-Function Limitation**

The Supreme Court has held that "the construction of a patent, including terms of art

within its claim, is exclusively within the province of the court." *Markman v. Westview

Instruments*, 517 U.S. 370, 372 (1996). The determination of whether a limitation is a means-

plus-function limitation falling within 35 U.S.C. § 112(f) is also a matter of law that the court

must decide at this stage of the proceeding. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296

F.3d 1106, 1113 (Fed. Cir. 2002). Thus, "[c]laim construction, including the meaning and scope

of any means-plus-function limitations, is a matter of law." *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001). And, in fact, "[w]hether a claim complies with the definiteness requirement of 35 U.S.C. [§ 112(b)] is a matter of claim construction," *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012), which, as noted, "is a matter of law reserved for court decision," *Nautilus, Inc.*, 134 S. Ct. at 2127 (citing *Markman*, 517 U.S. at 372). Claim construction of the "means for storing and retrieving a record on or in a physical medium" element of Claim 1 of the '500 Patent is therefore potentially dispositive for Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness.

The parties agree that this element is a means-plus-function claim limitation governed by 35 U.S.C. § 112(f), which provides as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

"Construction of a means-plus-function limitation includes two steps. 'First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function.'" *Noah Sys. Inc.*, 675 F.3d at 1313 (quoting *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006)). "For claim clauses containing functional limitations in 'means for' terms pursuant to [35 U.S.C. § 112(f)], the claimed function and its supporting structure in the specification must be presented with sufficient particularity to satisfy the requirements of [35 U.S.C. § 112(b)]." *S3 Inc. v. nVidia Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001). The Supreme Court recently clarified that "sufficient particularity" exists if the "patent's claims, viewed in the light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with *reasonable certainty*." *Nautilus, Inc.*, 134 S. Ct. at 2129 (emphasis added).

In the Proposed Order that the court provided the parties after the recess in the May 15, 2014 hearing, the court proposed the following claim construction of the "means for storing and retrieving a record on or in a physical medium" claim limitation:

**Function:**  The function is a "means for storing and retrieving a record".

- "storing" means both putting into storage and holding in storage;

- "retrieving" means taking out of storage for the purpose of presenting authentication to prove purchase and thus obtain ownership and delivery of the merchandise or content purchased;

- "record" means a unique URL corresponding to specific web merchandise or content purchased in the transaction and the key or code evidencing proof of purchase.

**Structure:**  The structure disclosed both in the claim itself and in the disclosure is the "physical medium", examples of which are listed in Figure 5 of the '500 Patent or Figure 6 of the '272 Application dated August 1, 2000.

- The "physical medium" is the "delivery system" for the record from the retailer to the consumer, though it is "not part of the ACARD invention," as noted in the introductory text to Figure 6 of the '272 Application (Dkt. No. 132-2, at 8), and examples include the simple paper ticket, pre-paid card/scratch-off card, or smart card pictured in both Figure 6 of the '272 Application and Figure 5 of the '500 Patent. The court finds, however, that the "physical medium" does not include a floppy disk, as pictured in both Figure 6 of the '272 Application and Figure 5 of the '500 Patent, because nothing in the Specification links the floppy disk to the function of storing and retrieving a record (as construed above) of the specific web transaction; rather, as Defendants have noted, in describing the picture of the floppy disk, the disclosure corresponding to Figure 5 of the '500 Patent only links it to the delivery of a mini-application (applet) "prior to accessing content." (See '500 Patent, col. 9, ll. 58-67; col. 10, ll. 1-8.)

For purposes of construction of this claim term, the court finds that a person of ordinary skill in the art would be able to infer from the relevant prior art the mechanical antecedents necessary to put and hold the record on the physical medium, whether a simple paper ticket, a prepaid/scratch off card, or a smart card, or other delivery system.

Thus, the "structure" disclosed in the Specification and linked specifically to this function in this claim term is the "delivery system" ('272 App., Dkt. No. 132-2,

Fig. 6, at 8) itself, i.e. the examples shown in Figure 6 of the '272 Application and Figure 5 of the '500 Patent or their equivalents. It is, in essence, a payment "voucher" in one of several possible forms.

Under the pre-*Nautilus* standard for determining indefiniteness under 35 U.S.C. § 112(b), a claim was indefinite "only when it is 'not amenable to construction' or 'insolubly ambiguous.'" *Datamize, LLC v. Plumtree Software, Inc.*, 417 F. 3d 1342, 1347 (Fed. Cir. 2005), *abrogated by Nautilus*, 134 S. Ct. at 2127. The court believed that under this standard, it would be possible to accommodate Plaintiff's argument that the required structure could be "inferred" by one of ordinary skill in the art despite a lack of specific disclosure in the specification.[3]

During the oral argument following the parties' review of the court's Proposed Order, however, Defendants persuaded the court that it needed to reexamine the applicable standards for construing a means-plus-function limitation. The proposed construction effectively severed a portion of the function and interpreted it to be the structure. The Supreme Court's decision in *Nautilus* rendered the proposed construction even more untenable. The court now finds that it erred in proposing to construe this claim limitation as above because the proposed construction "confuses function with structure." *See JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005). The court therefore re-analyzes the limitation for purposes of claim construction below.

A.      **Function**

"Determining a claimed function and identifying structure corresponding to that function involve distinct, albeit related, steps that must occur in a particular order. In short, function must

---

[3] Citing to the Federal Circuit decision in *Biosig Instruments, Inc. v. Nautilis*, 715 F.3d 1342 (Fed. Circ. 2005), *rev'd in Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (June 10, 2014) (*see* Pls.' Opening Claim Constr. Brief 6-10 & n.7 [Dkt. No. 207]), Plaintiffs argued that, because one need not teach prior art or how elements known from prior art work to one of ordinary skill in the art, a structure could be inferred in the specification by one of ordinary skill in the art under certain circumstances. (Tr. Ev. Hrg. 5/17/2014, at 78:4 – 80:18 [Dkt. No. 226].)

be determined before corresponding structure can be identified." *JVW Enters.*, 424 F.3d at 1330. (holding that, as to its second construction of a disputed claim limitation, the district court "effectively combined the two steps, resulting in the inappropriate inclusion of structure" when it "adopted" certain language describing the structure as "the claimed function"). As to this first step of determining the claimed function, "[t]he court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language, and only those limitations." *Cardiac Pacemakers*, 296 F.3d at 1113. Just as it is "improper to narrow the scope of the function beyond the claim language," the Federal Circuit has explained that "[i]t is equally improper to broaden the scope of the claimed function by ignoring clear limitations in the claim language." *Id.* (internal citations omitted). "When construing the functional statement in a means-plus-function limitation, we must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim." *Generation II Orthotics, Inc. v. Medical Tech., Inc.*, 263 F.3d 1356, 1364-1365 (Fed. Cir. 2001).

The court was asked to construe the claim limitation "means for storing and retrieving a record on or in a physical medium" of Claim 1 of the '500 Patent. In its Proposed Order, the court severed "on or in a physical medium" and construed the "function" as "means for storing and retrieving a record"; the court then found that "physical medium" was the structure as embedded within the claim limitation itself. Because this "structure" is vague, the court found in the Proposed Order that "a person of ordinary skill in the art would be able to infer from the relevant prior art the mechanical antecedents necessary to" perform the function by means of the construed structure, which it proposed finding was "the 'delivery system' ('272 App., Dkt. No. 132-2, Fig. 6, at 8) itself, . . . in essence, a payment 'voucher' in one of several possible forms."

But this approach violated "two tenets governing the determination of function in a means-plus-function limitation." *JVW Enters.*, 424 F.3d at 1331. "First, a court may not construe a means-plus-function limitation 'by adopting a function different from that explicitly recited in the claim.'" *Id.* (quoting *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999)). "Second, a court errs 'by importing the functions of a working device into the[] specific claims, rather than reading the claims for their meaning independent of any working embodiment.'" *Id.* (quoting *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1303 (Fed. Cir. 1999)). The court was perhaps too focused on attempting to preserve the validity of the patent where the specification was deficient in its disclosure of any structure for performing the *entire* function in the "means for storing and retrieving a record on or in a physical medium" claim limitation and in linking or clearly associating such structure with performing the function. But "claims can only be construed to preserve their validity where the proposed claim construction is 'practicable,' is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims." *Generation II Orthotics, Inc.*, 263 F.3d at 1365 (citing *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999)). The construction of this claim limitation in the Proposed Order was not practicable because it ignored the explicit language of the claim limitation by severing part of the function ("physical medium") and treating it as the structure (as further hypothetically understood by a person of ordinary skill in the art based on inferences about the mechanical antecedents of using a "physical medium" to perform the function). Thus, if the court had entered the Proposed Order, it would have improperly "broaden[ed] the scope of the claimed function by ignoring clear limitations in the claim language," as prohibited by *Cardiac Pacemakers*, 296 F.3d at 1113, by reading "on or in a physical medium" out of the function of the claim limitation.

Accordingly, the court now finds that the function in this means-plus-function claim limitation is "storing and retrieving a record on or in a physical medium." In this limitation, "storing" means both putting into storage and holding in storage; "retrieving" means taking out of storage for the purpose of presenting authentication to prove purchase and thus obtain ownership and delivery of the merchandise or content purchased by means of the correlated URL; "record" means a unique URL corresponding to specific web merchandise or content purchased in the transaction and the key or code evidencing proof of purchase; and "on or in a physical medium" describes where the record is stored and from where it may be retrieved.

### B.    Corresponding Structure

It is true that under 35 U.S.C. § 112(f) governing means-plus-function claim limitations, which was added as § 112 ¶ 6 of the 1952 Patent Act, "an applicant can describe an element of his invention by the result accomplished *or the function served*, rather than describing the item or element to be used." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27 (1997) (analyzing the "equivalents" language in 35 U.S.C. § 112(f) and expressing concern that "the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement") (emphasis added). Nevertheless, Congress also placed limits on means-plus-function claims by requiring in 35 U.S.C. § 112(f) that the claimed function correspond to the structure described in the specification to prevent "the overbreadth inherent in open-ended functional claims, such as those . . . which effectively purport to cover any and all means so long as they perform the recited functions." *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1256 n.7 (Fed. Cir. 2008). The Federal Circuit has prohibited such "pure functional claiming" because it "fail[s] to fulfill the 'public notice function' of 35 U.S.C. [§ 112(b)] by 'particularly pointing out and distinctly claiming' the invention." *In re Katz*

*Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1315 (Fed. Cir. 2011); *see also*

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008)

("The point of the requirement that the patentee disclose particular structure in the specification

and that the scope of the patent claims be limited to that structure and its equivalents is to avoid

pure functional claiming."). Thus, "[a]fter identifying the claimed function, the court must then

determine what structure, if any, disclosed in the specification corresponds to the claimed

function. In order to qualify as corresponding, the structure must not only perform the claimed

function, but the specification must clearly associate the structure with performance of the

function." *Cardiac Pacemakers*, 296 F.3d at 1113 (internal citations omitted).

The court must therefore look to the specification and prosecution history for disclosed

structure that corresponds to the function of "storing and retrieving a record on or in a physical

medium." In doing so, it must be mindful that "[s]tructure disclosed in the specification is

'corresponding' structure *only if* the specification or prosecution history clearly links or

associates that structure to the function recited in the claim." *Generation II Orthotics, Inc.*, 263

F.3d at 1367 (Fed. Cir. 2001) (citing *Medtronic, Inc. v. Adv. Cardiovascular Sys., Inc.*, 248 F.3d

1303, 1311 (Fed. Cir. 2001)) (emphasis added). The court's proposed construction of the

structure in its Proposed Order was defective because it severed part of the function itself—

"physical medium"—and regarded it as the "structure," thus violating Federal Circuit guidelines

as discussed above. In response to the court's questions, Plaintiffs referred to Figure 5 of the

'500 Patent as the disclosure of the structure, noting that "that's all we get, that's all you get in a

means-plus-function claim are those things that are identified within the disclosures." (Tr. Ev.

Hrg. 5/17/2014, at 130:14-17 & 131:10-14 [Dkt. No. 226].) Figure 5 of the '500 Patent contains

the following "physical media":

FIG. 5



The "physical medium" referred to in the claim limitation itself cannot be the structure corresponding to—and clearly linked to—the function of "storing and retrieving a record on or in a physical medium," as discussed above.[4] In addition, Figure 5 does not disclose a structure by virtue of merely providing examples of the types of physical media that are referenced in the function. Plaintiffs ultimately agreed that Figure 5 "actually discloses the physical medium" but that "the structure for storing and retrieving has to be inferred from those physical media" referred to in Figure 5—"not just inferred out of the blue, inferred out of a reading of the invention and understanding what a prepaid card [or other physical medium depicted in Figure 5] is" by one of ordinary skill in the art. (Tr. Ev. Hrg. 5/17/2014, at 132:3-14 [Dkt. No. 226].) But the function is not "storing and retrieving" but rather "storing and retrieving a record on or in a physical medium"—portions of this unitary function cannot be severed to preserve the validity of the claim. *Generation II Orthotics, Inc.*, 263 F.3d at 1364-1365.

Defendants' counsel used the physical ticket pictured as number 1 in Figure 5 as an example to illustrate the problem, which the court believes, in the end, is the lack of notice to the public of what they will be excluded from using based on this patent:

> So here if the specification said you could put the information on a paper ticket in this context using a laser printer or using photographic techniques, using a mimeograph machine, using a typewriter, I would say all of those would be structures that were linked with performing the first part of storing a record on or in a physical medium, but, again, that's why I always go back to my easy example what's the structure that retrieves the record from the paper ticket? There's no

---

[4] The court also notes that, aside from the main analysis relating to the lack of corresponding structure, the structure could not, in any event, include the pictured floppy disk, even if the court still believed that the structure is any of the physical media shown in pictured in both Figure 6 of the '272 Application (*see* Dkt. No. 132-2, at 8) and Figure 5 of the '500 Patent (which it had considered finding in the Proposed Order). The floppy disk could not have been the structure because nothing in the specification links the floppy disk to the function of storing and retrieving a record of the specific web transaction on or in a physical medium; rather, as Defendants have noted (*see* Defs.' Mem. Supp. Mot. Summ. J. Indefiniteness 6 n.3 [Dkt. No. 128]), in describing the picture of the floppy disk, the disclosure corresponding to Figure 5 of the '500 Patent only links it to the delivery of a mini-application (applet) "prior to accessing content." (*See* '500 Patent, col. 9, ll. 58-67; col. 10, ll. 1-8.)

one—I mean I still don't believe I've heard one. . . . What's the structure that gets the record off the paper ticket? I haven't heard one. . . . So since we know there's none disclosed in the specification, and you say sort of infer, you can't infer a particular structure for doing it. It's just anything that anybody could ever think of in any way, and that's just not what the statute is. And, again, there's no way for the public to know what they could or could not do. I think what I hear is just if you could think of it, I'll tell you what's infringing. I think that's not the notice requirements of the patent statute.

(Tr. Ev. Hrg. 5/17/2014, at 124:7 – 125:12 [Dkt. No. 226].) In addition, Defendants argued in

their brief that the items shown in Figure 5

are the "physical medium" and not the means for "storing and retrieving a record on or in a physical medium." There is no structure disclosed that actually stores or retrieves a record from the CARD. For example, a "record" might be recorded on a ticket using a variety of structures (typewriter, printing press, laser printer, dot matrix printer, phototransfer, etc.) but none of the structures are disclosed in the specification. Likewise, there may be many ways of retrieving a "record" from a ticket (optical character recognition scanner, etc.) but again, there is no structure disclosed in the specification for performing that function. Plaintiffs' proposed structures [such as "cards", "smart cards", and "magnetic tape" which are referred to elsewhere in the specification] are merely examples of the physical media where the record could be stored or retrieved from. They are not the structure that performs the storing and retrieving [of the record]. For example, one of the proposed structures is a magnetic strip (which, again, is not disclosed in the specification [magnetic *tape* is]). A record can be stored on a magnetic strip, such as one contained on a credit card. The magnetic strip, however, does not write the record on itself, nor is it capable of retrieving the record from itself. Some other apparatus is necessary in order to retrieve the record stored on the credit card. Likewise, for example, "bar codes" do not perform the function of "retrieving a record on or in a physical medium."

(Defs.' Mem. Supp. Mot. Summ. J. Indefiniteness 4-6 [Dkt. No. 128].) Moreover, the court

agrees that "[c]onstructions that only look for structures that could store records or from which

records could be retrieved do not give meaning to the phrase 'on or in a physical medium.'" (*Id.*

at 6.)

Although Plaintiffs' argument that disclosure need not teach prior art because the law

allows one of ordinary skill in the art to infer a structure where none is specifically included in

the specification contains a certain internal appeal on the surface, the Federal Circuit appears to

have prohibited this approach of disclosure by inference under facts such as this.[5] In *Biomedino, LLC v. Waters Technologies Corp.*, the Federal Circuit asked "for purposes of [§ 112(f)], is sufficient corresponding structure disclosed when the specification simply recites that a claimed function can be performed by known methods or using known equipment where prior art of record and the testimony of experts suggest that known methods and equipment exist?" 490 F.3d 946, 951 (Fed. Cir. 2007) (noting that "[i]n *Medical Instrumentation*, 344 F.3d 1205, we came close to answering that question in the negative"). The *Biomedino* Court held, in answer to this question, that "[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, *not simply whether that person would be capable of implementing a structure*. Accordingly, a bare statement that known techniques or methods can be used *does not disclose structure*. To conclude otherwise would vitiate the language of the statute [§ 112(f)] requiring 'corresponding structure, material, or acts described in the specification.'" *Id.* at 953 (quoting 35 U.S.C. § 112(f)) (emphasis added).

In fact, Plaintiffs' argument resembles the argument made by the plaintiff-appellant, and rejected by the Federal Circuit, in *ePlus, Inc. v. Lawson Software, Inc.*:

> ePlus argues that it is not required to disclose a structure that corresponds to the overall function of generating purchase orders because implementing that functionality was already known prior to the '683 patent. According to ePlus, the specification need only disclose those aspects of the claimed invention that do not exist in the prior art—i.e., using a single requisition to generate multiple purchase orders. The suggestion is that *by combining the teachings of the prior art and the '683 patent, one of ordinary skill in the art would know how to implement the claimed invention.*
>
> We disagree. The indefiniteness inquiry is concerned with whether the bounds of the invention are sufficiently demarcated, *not with whether one of ordinary skill in the art may find a way to practice the invention*. To assess whether a claim

---

[5] The court disregards the Declaration of Plaintiffs' expert Steven Sloan because it lacks foundation and because Plaintiff, representing himself *pro se* at his expert's deposition, prevented Defendants' counsel from inquiring into the assumptions and facts relied upon in Mr. Sloan's opinions. *See* Fed. R. Civ. P. 26(b)(4)(B) and (C). Because Defendants were precluded from knowing the bases for Mr. Sloan's opinions, Mr. Sloan's Declaration offering those opinions is stricken.

is indefinite, therefore, we do not look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent. We rather look at the disclosure of the patent and determine if one of skill in the art would have understood that disclosure to encompass [the required structure]. Here, the specification does not disclose any structure that is responsible for generating purchase orders. There is no instruction for using a particular piece of hardware, employing a specific source code, or following a particular algorithm. There is therefore nothing in the specification to help *cabin the scope of the functional language* in the means for processing element: *The patentee has in effect claimed everything that generates purchase orders under the sun.* The system claims are therefore indefinite.

700 F.3d 509, 519 (Fed. Cir. 2012), *vacated on other grounds in* 760 F.3d 1350 (Fed. Cir. 2014) (internal quotation marks and citations omitted, emphasis added).

Here, as in *Halliburton Energy Services*, Plaintiffs "effectively purport to cover any and all means so long as they perform the recited functions" by recourse to this inference approach. 514 F.3d at 1256 n.7. It is true that the Statute allows "an applicant [to] describe an element of his invention by the result accomplished *or the function served*, rather than describing the item or element to be used." *Warner-Jenkinson Co.*, 520 U.S. at 27. But "in return for generic claiming ability" in means-plus-function claim elements, "the applicant must indicate in the specification what structure constitutes the means." *Biomedino, LLC*, 490 F.3d at 948. "'If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid the price but is rather *attempting to claim in functional terms unbounded by any reference to structure in the specification*.'" *Id.* (quoting *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003)) (emphasis added). Plaintiffs here are effectively "attempting to claim in functional terms unbounded by any reference to structure in the specification." The inference argument nullifies any useful notice to the public that the patent or its specification could conceivably provide. As Defendants noted, "you can't infer a particular structure for" performing the function because

doing so under these facts would mean that the structure is "just anything that anybody could ever think of in any way, and that's just not what the statute is"; if that were a valid approach in this case, "there's no way for the public to know what they could or could not do." (Tr. Ev. Hrg. 5/17/2014, at 125:5-9 [Dkt. No. 226].) As a sister District Court has noted, echoing *ePlus*, "[a] claim element employing [§ 112(f)] cannot encompass all structures that can perform the recited function." *Potter Voice Techs. LLC v. Google, Inc.*, No. 12-cv-01096-REB-CBS, 2014 U.S. Dist. LEXIS 37208, 9-13 (D. Colo. Mar. 19, 2014). The court agrees that the facts of this case, and the way the patent is written, would effectively create an infinite set of structures that could perform the recited function in this means-plus-function claim limitation. That obviously "fail[s] to fulfill the 'public notice function' of 35 U.S.C. [§ 112(b)] by 'particularly pointing out and distinctly claiming' the invention." *In re Katz*, 639 F.3d at 1315.

Plaintiffs also turn to *Cardiac Pacemakers* for the proposition that "[a]lternative embodiments may disclose different corresponding structure, and the claim is valid *even if only one embodiment discloses corresponding structure*. 296 F.3d at 1113-1114 (citing *Ishida Co. v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000)) (emphasis added). Because a computer is pictured in several of the Figures in the '500 Patent, and referred to in various places in the specification, Plaintiffs argue that a general purpose computer is the one embodiment that "discloses corresponding structure," thus saving the claim limitation under *Cardiac Pacemakers*. It is true that in *In re Katz* where seven claims simply recited the claimed functions of "processing," "receiving," and "storing," the Federal Circuit held that "[a]bsent a possible narrower construction of the terms 'processing,' 'receiving,' and 'storing,' . . . those functions can be achieved by any general purpose computer without special programming." 639 F.3d at 1316. In other words, in *In re Katz*, for those seven claims, "it was not necessary to disclose more

structure than the general purpose processor that performs those functions. Those seven claims do not run afoul of the rule against purely functional claiming, because the functions of 'processing,' 'receiving,' and 'storing' are coextensive with the structure disclosed, i.e., a general purpose processor." *Id.*

But Plaintiffs' reliance on *In re Katz* for the proposition that a general purpose computer need be the only structure disclosed in the specification is unavailing in this particular case. Though the recited function in the means-plus-function claim limitation at issue here includes the words "storing" and "retrieving" (on the surface similar to "storing" and "*receiving*" at issue in *In re Katz*), the function in this case is not the broad, general use of such terms as in *In re Katz* and is not "coextensive" with a general purpose computer. Rather, Plaintiffs' function is not merely "storing" and "retrieving" but rather "storing and retrieving a record on or in a physical medium," which upon consideration is a rather complex function that requires the type of much "narrower construction" of terms such as "storing" and "retrieving" that was "absent" in the Federal Circuit's treatment of "storing" and "receiving" in *In re Katz*. A general purpose computer, without more, cannot "store and retrieve a record on or in a physical medium" if the physical medium is a paper ticket. It cannot perform the function if the physical medium is a smart card without becoming a special purpose computer that would require the disclosure of the algorithm(s) that would be necessary to accomplish that purpose.

As in *ePlus*, the diagram in several of the Figures of the '500 Patent, for example Figure 1 (provided above) showing a computer, does not disclose any structure for performing the function. The court can accept that the picture of the computer labeled "End-User" in Figure 1 could be a general purpose computer. This is where the consumer enters the URL of the purchased merchandise and then the associated passcode evidencing proof of purchase and

ownership of the corresponding web content. But the computer shown twice in the Figure over the label "Web Content Dealer" cannot be a general purpose computer under *In re Katz*. It would require special programming to "store and retrieve a record on or in a physical medium," not to mention to effect the transaction, to catalogue the merchandise and correlate it to the specific URL relating to the specific merchandise that a specific retailer is willing to make available to the purchaser, and then to coordinate payment and transfer of money. At the minimum, it would require software that recognizes the authorization message, which would be necessary to "retrieve" the record on or in a physical medium.

"If [the court's] inquiry reveals that no embodiment discloses corresponding structure, the claim is invalid for failure to satisfy the definiteness requirement of [§ 112(b)]." *Cardiac Pacemakers*, 296 F.3d at 1113 (citing *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001)). The Supreme Court has recently clarified the requirements and standard of § 112(b):

> Section 112, we have said, entails a "delicate balance." On the one hand, the definiteness requirement must take into account the inherent limitations of language. Some modicum of uncertainty, the Court has recognized, is the price of ensuring the appropriate incentives for innovation. One must bear in mind, moreover, that patents are not addressed to lawyers, or even to the public generally, but rather to those skilled in the relevant art. . . .
>
> At the same time, a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them. Otherwise there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims. And absent a meaningful definiteness check, we are told, patent applicants face powerful incentives to inject ambiguity into their claims. Eliminating that temptation is in order, and "the patent drafter is in the best position to resolve the ambiguity in patent claims. . . .
>
> To determine the proper office of the definiteness command, therefore, we must reconcile concerns that tug in opposite directions. *Cognizant of the competing concerns, we read [§112(b)] to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty.* The definiteness

requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable.

*Nautilus, Inc.*, 134 S. Ct. at 2128-29 (internal quotation marks, citations, footnotes, and alterations omitted, emphasis added). "Consistently, the federal circuit has held that the absence of an adequate disclosure of a corresponding structure renders means-plus-function claims invalid." *Potter Voice Techs. LLC*, 2014 U.S. Dist. LEXIS 37208, at *13 (citing *Aristocrat Techs.*, 521 F.3d at 1332-33). The court finds that this claim limitation "viewed in light of the specification and prosecution history," does not "inform those skilled in the art about the scope of the invention with reasonable certainty." In fact, failing to implement a "meaningful definiteness check" here would, as the Supreme Court observed, contribute to the "powerful incentives" faced by patent applicants "to inject ambiguity into their claims." Accordingly, the court GRANTS Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness (Dkt. Nos. 127-29). The court's finding of indefiniteness based on the lack of associated structure for the "means for storing and retrieving a record on or in a physical medium" element of Claim 1 of the '500 Patent invalidates claims 1-7 of the '500 patent.

## II.      Invalidity Based on Lack of Written Description

### A.      Claim Construction

The court has been asked to construe the terms "payment message," "selling computer," and "authorization message" which appear in Claim 10 of the '500 Patent as well as in numerous other claims in that patent and the '695 and '993 Patents. Due to the lack of support in the specification for these claim terms (as discussed below), the court construes them based on their use in Claim 10 of the '500 Patent and the parties' oral argument.

*1.      "payment message"*

At oral argument, the parties ultimately came to practical agreement that a "payment message" must be an electronic message indicating that payment was received. The court agrees and will construe this term accordingly.

*2.      "selling computer"*

The court construes this term in Claim 10 of the '500 Patent, after lengthy oral argument, to mean the seller-side computer or computer network comprised of the computer/network of the web content dealer (i.e. the vendor of the merchandise or content to be paid for in a retail over-the-counter transaction for purchase by the customer of such merchandise or content in an internet transaction). Thus, the retailer's computer at the check-out location would be included in this claim term only if it performs the seller/vendor-side functions.

*3.      "authorization message"*

Plaintiffs erroneously noted this term to be construed as "authentication message" in their Opening Claim Construction Brief. (*See* Pls.' Op. Cl. Const. Br. 23 [Dkt. No. 207].) At oral argument, they clarified that the claim term at issue in this limited claim construction process is in fact "authorization message."

Defendants urge the court to adopt the entire claim in which this term appears in Claim 10 of the '500 Patent as the construction of the term, i.e. that it is an electronic message "to be created on said selling computer in or as a result of said payment message that comprises at least said specification of said product and authentication based on cryptographic key(s)." (*Cf.* '500 Patent, col. 12, ll. 13-15.) Plaintiffs concede that the "authorization message" must be an electronic message as it is always associated with the "selling computer"; however, they do not agree that it should be so limited as to its use in Claim 10 of the '500 Patent.

The court agrees with Plaintiffs that the "authorization message" must be an electronic message but that it needs no further specific definition because the context of its use is clear in '500, '695, and '993 Patents.

**B.     Written Description**

Under 35 U.S.C. § 112(1), "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." As the Federal Circuit has repeatedly stated, "the purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353-54 (Fed. Cir. 2010) (en banc) (quoting *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004)). Because this inquiry concerns "the scope of the right to exclude," the standard articulated in 35 U.S.C. § 112(1) requires patent applicants to describe their invention in sufficient detail in the specification to show that the applicants were in possession at the time of filing the application what is later claimed. *Gentry Gallery v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998). "[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharms., Inc.*, 598 F.3d at 1351.

Normally, "[w]hether a specification complies with the written description requirement of [§ 112(1)] is a question of fact." *Gentry Gallery*, 134 F.3d at 1479. Here, however, Plaintiffs

have not been able to demonstrate a genuine issue of material fact that the '272 Application[6] discloses these features at all, and the matter is appropriate for summary judgment. It cannot be disputed that the disclosure as originally filed in the '272 Application does not contain written description that describes the "payment message," "selling computer," or "authorization message" limitations of claim 10 of the '500 Patent. Likewise, it is indisputable that the first mention of these terms with respect to any of the patents at issue in this lawsuit was on June 17, 2005 when Plaintiff made a further amendment to his claims in the prosecution process.

"An applicant complies with the written description requirement 'by describing the invention, *with all its claimed limitations*.'" *Gentry Gallery*, 134 F.3d at 1479 (quoting *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). "The 'written description' clause of section 112 has been construed to mandate that the specification satisfy two closely related requirements. First, it must describe the manner and process of making and using the invention so as to enable a person of skill in the art to make and use the full scope of the invention without undue experimentation. Second, it must describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention *at the time of the application*, i.e., that the patentee invented what is claimed." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344-1345 (Fed. Cir. 2005) (internal citations omitted, emphasis added). Particularly relevant given Plaintiff's prosecution history in this case, "[w]hen the applicant adds a claim or otherwise amends his specification after the original filing date . . . the *new claims or other added material must find support in the original specification*."

---

[6] Although Plaintiffs claimed priority to the date of the '272 Application (August 1, 2000) throughout the briefing on Defendants' Motion for Summary Judgment of Invalidity Based on Written Description, Plaintiffs seemed to prevaricate about that in the claim construction process, at times suggesting that the date of their provision application should have priority (June 30, 2000). But the court agrees with Defendants that "[t]here is no written description" of these terms "in either the June 30, 2000 provision application of the August 1, 2000 application." (Defs.' Reply 6 [Dkt. No. 215].) The distinction is therefore irrelevant but the court will use the date of the '272 Application as the priority date.

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111, 1118 (Fed. Cir. 2001) (citing *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000)) (emphasis added). The '272 Application does not describe the as-issued patents at issue in this case "with all their limitations." Though the exact terms under consideration need not themselves be contained in the '272 Application, *see Lockwood*, 107 F.3d at 1572, "[t]o fulfill the written description requirement, the patent specification 'must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Gentry Gallery*, 134 F.3d at 1479 (quoting *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989)).

Plaintiffs argue that the terms can be inherently or implicitly present in the original application in order to support new claims added during the prosecution of the patents. Although this is correct in some circumstances, this is not such a case. Here, Plaintiffs suggest that discussion of "secure web transactions" or "public key infrastructure" ("PKI") in the '272 Application (dated August 1, 2000) suffices as inherent disclosure of the "payment message," "selling computer," and "authorization message" limitations of claim 10 of the '500 Patent, which were first added on June 17, 2005. But "[i]n order for a disclosure to be inherent . . . the missing descriptive matter must *necessarily* be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (citing *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991)).

The court agrees with Defendants that "neither 'secure web transactions' nor PKI necessarily mean that there are 'payment messages' or ['authorization messages'] to start with, or 'payment messages' or ['authorization messages'] going to or from 'selling computers' or with other required features." (Defs.' Mem. Supp. Mot. Summ. J. Invalidity Based on Written

Descr. 8 [Dkt. No. 131].) Nothing in the '272 Application would clearly allow a person of ordinary skill in the art to recognize that no later than August 1, 2000, Plaintiff James Driessen was in possession of an invention with the claim limitations of claim 10 of the '500 Patent (or all derivative or dependent claims in that or the other patents at issue in this lawsuit). The court therefore GRANTS Defendants' Motion for Summary Judgment of Invalidity Based on Written Description (Dkt. Nos. 130-32). Accordingly, the court finds claims 10-15 of the '500 Patent, all twenty-seven (27) claims of the '695 Patent, and all forty-one (41) claims of the '993 Patent invalid for lack of written description.

## CONCLUSION

For the reasons discussed above, the court GRANTS Defendants' Motion for Summary Judgment of Invalidity Based on Indefiniteness (Dkt. Nos. 127-29), finding claim 1 of the '500 Patent invalid for indefiniteness, thus also invalidating claims 2 – 7 of the '500 Patent. The court also GRANTS Defendants' Motion for Summary Judgment of Invalidity Based on Written Description (Dkt. Nos. 130-32), finding claims 10-15 of the '500 Patent, all twenty-seven (27) claims of the '695 Patent, and all forty-one (41) claims of the '993 Patent invalid for lack of written description. Claims 8 and 9 of the '500 Patent were not put at issue in these motions.

SO ORDERED this 10th day of March, 2015.

BY THE COURT:

Clark Waddoups
United States District Court Judge